**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ben Herbert SUTHERLAND, Defendant-Appellant.**

**No. 27899.**

United States Court of Appeals, Fifth Circuit.

April 29, 1970.

Rehearing Denied June 4, 1970.

---

# 1154

Lewis Tarver, Jr., San Antonio, Tex. (court-appointed), for defendant-appellant.

Seagal V. Wheatley, U. S. Atty., Wayne F. Speck, Reese L. Harrison, Jr., Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

A jury convicted Ben Herbert Sutherland on three counts relating to bank robbery. Because the District Court found that an impermissibly suggestive photographic identification created a substantial likelihood of misidentification, yet allowed the question of an in-court identification to go to the jury, we reverse and remand for a new trial. Other issues raised in this appeal which may arise on retrial are also considered.

## I. BACKGROUND

Sutherland was indicted for conspiracy to rob unnamed banks,[1] Bank robbery[2] and robbery with a dangerous weapon.[3] He pleaded not guilty to all three counts of the indictment but was found guilty by the jury on all three counts.

The crimes for which Sutherland was indicted supposedly had their genesis in a jail in Phoenix, Arizona, where Suth-

erland and one William James Kump shared a cell. During their incarceration, Sutherland and Kump were supposed to have participated in what amounted to a seminar on techniques for successful bank robberies. The Government contends that the theories espoused by the two cell-mates, and others, were put into practice by Sutherland and Kump upon their release.

When Sutherland and Kump were released from the Phoenix jail, they first went to California, then headed east supposedly bound for the promised land of Mississippi. Their peregrinations finally brought them to San Antonio, Texas, where they stayed for several days. Upon arrival in San Antonio on September 26, 1968, the companions registered in one hotel as "Joe McDonald and Son." Several days later they changed hostelries but again registered as McDonald and son. At about 2:00 p. m. on October 1, 1968, Kump robbed the Northeast National Bank of some $5,457.00, but was shot and killed by a guard as he tried to make his getaway.

Within a few hours of the robbery, Sutherland—with his and Kump's luggage—departed San Antonio aboard a Greyhound Bus, bound for San Jose, California, where he was arrested by the F. B.I. immediately after his arrival several days later.

## II. IDENTIFICATION OF SUTHERLAND—PHOTOGRAPHIC AND IN-COURT

The only direct evidence connecting Sutherland with the robbery was given by two female employees of the bank who identified him in the courtroom as having been the man they saw running toward the bank immediately after the robbery had occurred and Kump had been shot. The difficulty with their in-court identifications is that they were preceded in both cases by a photographic identification or pic-

1. 18 U.S.C.A. § 371 (1966).

2. 18 U.S.C.A. § 2113(a) (1951).

3. 18 U.S.C.A. § 2113(d) (1951).

ture spread which the trial court described as "illegal, improper, and should not have been done" and held created a "considerable chance that the procedures utilized led to misidentification of the defendant." In our view, this amounts to a ruling that the picture spread was conducted in such a way as to run directly afoul of Simmons v. United States.[4] Simmons held that:

"* * * convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside * * * if the *photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.*[5] (Emphasis supplied)

Having thus ruled the picture spread defective, the District Court instructed the jury it must disregard the photographic identification, but permitted the jury to decide whether in-court identifications were entitled to any weight as evidence. The judge commented on the in-court identification evidence under the following instruction:

"Now, we get to the courtroom identification. It is true that a positive identification of the defendant was made by each lady in the courtroom. You must decide, therefore, whether or not, in view of all of the circumstances in the case, this identification is valid. In other words, you must determine the extent to which the image of the defendant, reflected by the photograph of him, seen by the witnesses, influenced their identification of him in the courtroom."

As we read Simmons, an "impermissibly suggestive" picture spread requires the exclusion of any in-court identification as to which there was a "substantial likelihood of irreparable misidentification." Since the District Judge had

clearly ruled that both elements of *Simmons* were present in the instant case, we hold that he was in error in not excluding the in-court identifications. This case must therefore be reversed and remanded for a new trial.

*Simmons* is careful not to prohibit photographic identification techniques which are widely used in current police procedures. The practice will undoubtedly continue. With the hope that it might prove of assistance to the District Judges of this Circuit in developing a uniform approach to the trial of cases in which a *Simmons* issue is present, we offer the following suggested procedure. Prior to offering the in-court identification before the jury, the trial judge should be accorded an opportunity out of the presence of the jury to determine if the picture spread in the particular case was impermissibly suggestive either in the photographs used or the manner or number of times they are displayed. If the judge makes such a determination, he then should determine if the impermissibly suggestive picture spread gives rise to a "likelihood of irreparable misidentification." If both elements are found, *Simmons* prohibits the use of the in-court identification. However, if the judge does not find as a matter of law both that the picture spread was impermissibly suggestive *and* that there is a substantial likelihood of irreparable misidentification, the in-court identification may be put before the jury. In such a case the defendant may use the facts of the picture spread for cross-examination purposes to attack the credibility of the identifying witness. The foregoing procedure will not only have the salutary effect of avoiding situations in which the District Judge must solemnly instruct the jury to disregard vital and unforgettable evidence,[6] but will also save the defendant the Hobson's choice

4. 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

5. *Id.* 384, 88 S.Ct. at 971.

6. *Cf.* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

of whether to attack the in-court identification by attacking a prior photographic identification that might wind up being upheld thereby reinforcing the identification of the defendant.

We do not regard *Simmons* as having enunciated a *per se* rule as to picture spread cases. The Court there said, "This is a claim which must be evaluated in light of the totality of surrounding circumstances." [7] We have previously declined to invalidate picture spreads on at least two occasions.[8] These picture spread cases should be approached on the basis of their own facts in the light of the "totality of surrounding circumstances," so we can see no useful purpose in attempting a listing of the various indicia of an impermissibly suggestive picture spread—what might be regarded as suggestive in one instance might very well be quite harmless in another. We reiterate what is implicit in United States v. Ballard, that only the picture spread itself must be evaluated in determining if it meets the standard—whether other more desirable methods of identification (e. g. a line-up) were available, or whether there was a compelling need for speedy identification, are just not relevant to a determination of the impermissibly suggestive issue.

The separate determination of whether the impermissibly suggestive picture spread is likely to give rise to irreparable misidentification must also be made on an *ad hoc* basis. Clearly, if a teller in a bank is held up by a person he knows well, a picture spread, regardless of its suggestiveness, is unlikely to affect the teller's identification. But if the witness caught only a fleeting glimpse of an unknown fleeing felon, the likelihood of misidentification is substantially increased by a suggestive picture spread. Between these two extremes, the determination must be made based upon the facts in the particular case.

## III. EVIDENCE OF PRIOR OFFENSES.

Sutherland contends that evidence of prior offenses of which he had been accused was improperly admitted. The evidence complained of came from two sources: (1) evidence was offered concerning the stealing of a getaway car and wallet with identification cards, which could possibly be used by Sutherland; (2) the testimony about the jailhouse "seminar" to which we have previously referred necessarily revealed that the discussion took place while the participants were cellmates in the Phoenix jail.

The purported getaway car was apparently stolen by Kump from the parking lot of a bowling alley, and the wallet which was found in the getaway car, was taken from another car parked nearby. There was no evidence connecting Sutherland to the taking of either the car or the wallet; in fact, it was stipulated that his fingerprints were not found on either the car or its contents. This evidence was relevant, if at all, only to show that Kump was following the *modus operandi* which the Government contends was originally discussed by Sutherland, Kump and others in the Phoenix jail. There was no attempt to prove that Sutherland himself stole either the car or wallet. Sutherland did not testify in his own behalf, therefore the Government could not have properly offered evidence of prior convictions to attack his credibility. However, proof of another crime which aids in or is appropriate in establishing one of the crimes in question—conspiracy to commit robbery—is admissible. Matthews v. United States, 407 F.2d 1371 (5th Cir. 1969). We are therefore not persuaded by Sutherland's contentions as to the car and wallet evidence.

As to the evidence of the jailhouse seminar, we come to another con-

---

7. 390 U.S. at 383, 88 S.Ct. at 970.

8. *See* United States v. Ballard, 423 F.2d 127 (5th Cir. 1970); United States v. Hughes, 418 F.2d 1222 (5th Cir. 1969).

clusion. We find no attempt in the record to prove that Sutherland was convicted of the offenses for which he was incarcerated in Phoenix. We therefore view the testimony concerning the jailhouse seminar as being seriously prejudicial to Sutherland. It is quite likely that the mere fact that he had been incarcerated with Kump convinced the jury that the two were co-conspirators. We do not hold that the substance of the conversations concerning the technique of robbing banks is inadmissible. The substance of these conversations forms a very important part of the Government's case on conspiracy and should not be excluded merely because of the circumstance that they occurred in a cell in Phoenix. On the re-trial, however, the Government should be very carefully limited in producing the proof so as to keep from the jury any testimony as to the locus of the conversations.

## IV. EXCULPATORY STATEMENTS.

█ The Government introduced evidence of exculpatory statements which were made by Sutherland at the time of his arrest,[9] and then introduced evidence tending to rebut the exculpatory statements. At the Government's request, the Court charged the jury that "if the jury finds that the exculpatory statements were untrue and that the defendant made them voluntarily with knowledge of their falsity, the jury may consider the statements as circumstantial evidence of the defendant's consciousness of guilt." Sutherland contends that the supposed exculpatory statements amounted to nothing more than a denial of guilt, and in such circumstances the instruction given by the Court permits the jury to infer guilt from a denial of guilt. We agree with Sutherland's logic —that a denial of guilt itself should not be permitted to become evidence of guilt, see Massachusetts v. Trefethen, 157 Mass. 180, 31 N.E. 961 (1892); but in this case, appellant's major prem-

ise is in error: we do not regard the purported exculpatory statements as constituting merely a denial of guilt. Clearly, when an accused goes beyond a mere denial and affirmatively asserts an alibi or other explanation for his behavior, he has crossed over into the land of exculpatory statements to which the quoted instruction is proper.

## V. ADDITIONAL INSTRUCTIONS TO THE JURY.

During the course of its deliberations, the jury requested additional instructions by a note to the judge:

"We need more information or a restatement of the charge for counts two and three, specifically: What we are trying to determine is how close to the scene did the defendant have to be to be considered a principal? Can he be considered a principal if he was waiting at a prearranged place to receive part of the loot and arrange a getaway? We are presently deadlocked on those two counts."

In response to this request, the Judge read counts two and three of the indictment to the jury, summarized the elements of the offenses and instructed the jury further as to the definitions of certain words. The instructions then given contained no reference to the burden or quantum of proof, presumption of innocence, or any other matter necessarily favorable to the defendant.

Although the defendant did not request additional instruction or object to those given as required by Rule 30, Fed.R.Crim.P., and the point has not been preserved for this appeal, the case will have to be retried and it may be helpful to comment on the procedure followed here.

█ In giving additional instructions to a jury—particularly in response to inquiries from the jury—the court should be especially careful not to give an unbalanced charge. If the Judge chooses

---

9. For example, at the time of his arrest Sutherland did not merely deny being at the bank at the time of the robbery, he

went further and stated that he was in the vicinity of the hotel downtown where he and Kump were staying.

to give any additional charge and elects not to repeat the entire original charge, he should remind the jury of the burden and quantum of proof and presumption of innocence or remind them that all instructions must be considered as a whole or take other appropriate steps to avoid any possibility of prejudice to the defendant.

## VI. CONCLUSION.

The appellant has raised other issues on this appeal which we have considered and find without merit.[10] Sutherland has been represented throughout by appointed counsel. At the conclusion of the trial in the District Court, the Judge thanked appointed counsel for the splendid job he had done defending Sutherland. We add our thanks to those of the District Judge. At a time when our judicial system is under attack in some areas, it is reassuring to note the vigor and skill with which appointed counsel has defended his indigent client in this case. We do not thank counsel merely for doing his job: we thank him for the essential role he has played so well in making the system work.

Reversed and remanded.

## ON PETITION FOR REHEARING

### PER CURIAM:

In a petition for rehearing, the Government contends that the eyewitness identification of Sutherland should be admissible—notwithstanding the impermissible suggestive picture spread—because of Section 701(a) of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.A. § 3502). The point was not raised in the court below *nor has it been previously raised in this court.* Having tried and appealed its case on one theory, an unsuccessful party may not then use a petition for rehearing

as a device to test a new theory. Minute Maid Corp. v. United Foods, Inc., 291 F.2d 577 (5th Cir. 1961); *see* Liberty Mutual Ins. Co. v. Davis, 412 F.2d 475 (5th Cir. 1969) (on Motion for Attorneys' Fees on Appeal). We certainly do not regard this case as presenting extraordinary circumstances which would justify our considering on petition for rehearing, issues which were not previously presented. *See e. g.* McKissick v. United States, 379 F.2d 754 (5th Cir. 1967). If on the retrial, the Omnibus Crime Act issue is raised, there will be adequate opportunity for the district court to determine if the act is applicable and, if so, if it is valid.

The government also argues that the evidence about the jailhouse seminar which placed Sutherland and Kump together in the Phoenix jail was merely cumulative to other evidence that these persons had been together previously in jail. The government contends that such cumulative evidence should not be grounds for reversal and, under the circumstances of this case, we agree.

Therefore, the third paragraph of Part III of the original opinion is withdrawn, and the following is substituted in its place.

As to the evidence of the jailhouse seminar, we hold that the substance of the conversations concerning the technique of robbing banks is admissible and should not be excluded merely because of the circumstance that the conversations occurred in a cell in Phoenix. The record contains other evidence, unchallenged on this appeal, which tends to prove that Sutherland was no stranger to the inside of a jail cell. Consequently he was not prejudiced by admitting the evidence of the jailhouse seminar.

However, we placed our reversal on the grounds that the district court permitted

---

10. Sutherland raises an issue regarding the withholding of information by the government in violation of the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We find it unnecessary to reach this issue since we are re-

versing on other grounds, and we presume that the defendant was made aware of all information in the Government's file during the first trial. Since there must be a retrial in any event, we do not believe that the *Brady* issue will re-occur.

an in-court identification, which that court had already condemned as tainted, to be considered by the jury.

It is therefore ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.