**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lorenzo Edward ERVIN, Jr., Defendant-**
**Appellant.**

**No. 30442**

**Summary Calendar.**[*]

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1971.

Rehearing Denied Feb. 18, 1971.

Glenn Zell, Atlanta, Ga. (Court-appointed) for defendant-appellant.

John W. Stokes, U. S. Atty., Allen L. Chancey, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Lorenzo Edward Ervin, Jr. was convicted by a jury of aircraft piracy in violation of 49 U.S.C.A. § 1472(i)

---

[*] Rule 18, 5th Cir.; *see* Isbell Enterprises v. Citizens Cas. Co. of N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

(1963), and of kidnapping in violation of 18 U.S.C.A. § 1201 (1966). He was sentenced to concurrent terms of life imprisonment on each count. On this appeal defendant mounts a two-pronged procedural attack on his convictions— first, he claims that shortly before trial the United States Attorney displayed a photograph of an airport building which also showed several individuals, including the defendant, to a group of government witnesses who later made in-court identifications of the defendant, and that the display of this photograph voided these identifications for the reason that defendant's counsel was not present at the witness interview; and second, since the United States Attorney knew the identity of counsel then representing the defendants, his actions in exhibiting the picture to such witnesses in the absence of defense counsel was such reprehensible conduct as to require a reversal. We reject both issues and affirm the convictions.

The facts follow a notorious pattern that, unfortunately, is becoming common enough to require only the barest recital for an understanding of our decision here. A youthful passenger boarded an airliner at Atlanta, Georgia which was routinely bound for Miami, Florida. Shortly after take-off he forced a stewardess at pistol point to admit him to the flight cockpit where, on threat of death to all aboard the aircraft, he forced the crew of the plane to divert the flight to Havana, Cuba. He remained, gun in hand, in the close confines of the cockpit for approximately one and one-half hours in the presence of five of the witnesses who later identified him. He was also observed by passengers in the plane, both as he compelled the stewardess to take him to the flight cockpit and again as he left the airplane after it had landed in Havana. The photograph which forms the basis of his present objection was a candid shot taken by a passenger from an aircraft window as the terrorist was walking away from the airplane in the company of Cuban authorities at the Havana airport. It depicts a young Negro male walking at an angle turned slightly away from the direction in which the camera was pointed and at a distance which approximates one hundred feet. The photograph was one of seven such shots of the Havana, Cuba airport terminal which the photographer testified were taken within minutes of the time the hijacked plane landed there.[1]

Ten witnesses made positive, unequivocal in-court identifications of the defendant as the hijacker. No objection was made by counsel for the defense to any of these in-court identifications at the time the testimony was developed during the government's case-in-chief. However, on cross-examination, nine of these defendants testified that one or two days before the trial the United States Attorney had showed them a small print of the snapshot detailed above which included the defendant, during the course of his discussions with him of their knowledge of facts surrounding the crime. One other witness, who was equally positive in her identification of the defendant as the air pirate, stated that she had never seen the photograph in question. She remembered and identified the defendant because of his abnormal behavior at the ticket gate, coupled with her recollection of a uniquely sharp clump of hair on the top of his head. One other witness among the first ten testified that the photograph has nothing to do with his ability to identify the defendant as his kidnapper; none of the other witnesses were queried about the effect which the photograph might have had on their ability to make their identifications. Seven of the identifying witnesses testified that, some 15 months before the trial and shortly after the hijacking they had selected the defendant's photograph from among six or eight full face photographs, all of different Negro males which had been exhibited to them by

---

1. Defendant was apprehended upon his return to this country by way of Germany.

government agents within a few days after the hijacking incident and while the defendant was still out of the country.

When the government rested its case and its identification witnesses had been excused, counsel for the defendant, for the first time, moved to exclude all identification testimony on the grounds that the in-court identifications were preceded by an unfair lineup or photographic confrontation, specifically referring to the immediate pre-trial use of the subject picture and further pointing out that the defendant was the only Negro seated at the defense table in the courtroom. The motion was overruled. The defendant then made an opening statement which included the following comments.

> "After conferring with him we determined that the issue in this case and the real issue to be tried by a jury would be that of insanity.
>
> \*    \*    \*    \*    \*    \*
>
> "Now, you have heard the case on behalf of the Government. There is no issue involved in this case as to whether or not this boy commandeered this airplane. You are not going to be called upon to decide that. The evidence is already overwhelming.
>
> "The issue is one of the guilt or not guilt by reason of insanity, and the standard that I have just read to you is what we say the evidence will show on behalf of the defendant."

The defendant proffered no alibi testimony but instead concentrated on proof of emotional and mental instability. In closing argument, counsel for the defendant again made the theory of his case clear with these words:

> "At the outset in this case our investigation revealed to us, after being appointed by the Court, substantially what the evidence in this case has shown. The issues are very sharply defined. It is somewhat unusual in that the issue, instead of being whether or not this man committed the acts charged in the indictment, whether he

is guilty of air piracy and whether he is guilty of kidnapping, are, instead, whether, because of his mental condition, the lay term being 'insanity', he is legally responsible for those acts. "I said at the outset that this, in our opinion, would be the real issue involved in this case. After hearing all of the evidence since Tuesday morning in this case I am more certain than ever that that is the only issue in the case."

Our affirmance is based upon three grounds.

### I.

For pre-trial photographic display procedures to constitute reversible error, they must violate a two-part test laid down by the Supreme Court of the United States in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). First, the photographic display itself must be impermissibly suggestive. Second, it must give rise to a very substantial likelihood of irreparable misidentification. United States v. Sutherland, 428 F.2d 1152 (5th Cir. 1970).

The photograph here involved was certainly not a typical "mug shot." It was instead a film-preserved part of the *res gestae* showing the Havana, Cuba airport during the actual process of the accomplishment of this criminal action while it was still in progress. The fact that this photograph included a depiction of the perpetrator of the crime, who was shown both at a distance and at an oblique angle, did not make the photograph impermissibly suggestive within the meaning of *Simmons*. In fact it was not suggestive at all. The evidence disclosed that the photograph depicted a true detail of an active part of the hijacking and kidnapping. Its pre-trial display to prospective witnesses was no more than the equivalent of showing such witnesses a contemporaneously made written statement describing facts, in order to refresh their recollection and make their testimony more accurate.

The photograph did not suggest possibilities, it showed facts. A review of events with witnesses prior to a trial is a time-honored and a legitimate, if not a required, part of the duty every attorney owes both the court and his client in the development of a trial's search for truth.

Furthermore, the hijacker was in the intimate presence of the identifying pilot, co-pilot, flight engineer, stewardess and transient pilot who happened to be the other occupant of the flight cockpit, for over an hour and a half, during which time he was threatening their lives with a loaded revolver. It is to be expected under such circumstances that none of these witnesses would be mispersuaded in their identification of the defendant because of the photograph exhibited to them in this case. This is borne out by the fact that the only witness who spoke on this subject stated emphatically that the photograph had nothing to do with his ability to recall the person who had so intimately and continuously threatened his life. Two of the witnesses even recalled looking down the barrel of the culprit's cocked revolver and seeking the bullets loaded in its chambers. The photographs in evidence show that the space in which these persons were held captive required them to be in close contact. Rather than presenting a situation where there was a very substantial likelihood for misidentification, the circumstances here tended to make identification almost indelibly certain.

While there is now no doubt that a defendant has a right to have counsel present at a pre-trial line-up in which he is included, under the doctrine enunciated in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178 (1967), we are further taught by that Court's subsequent decision in Simmons v. United States, *supra*, that these cases do not intend to lay down a *per se* rule covering every instance in which a photograph of the defendant is exhibited to a witness before trial. Rather, each such photographic case must be considered on its own facts. United States v. Sutherland, *supra*. We are not willing to expand on *Simmons* by holding that counsel for defendant has a right to be present when counsel for the Government holds pretrial conferences with his prospective witnesses if he shows them such a photograph, especially in a case such as the one at bar where it is clear that the in-court identifications of the defendant had a completely independent source from the *res gestae* photograph exhibited to these witnesses at such conference.

## II.

The sole theory of defense in the court below was insanity. The record from pre-trial colloquy and jury voir dire to the closing argument clearly reflects that the identity of the defendant as the aircraft pirate was both expressly and impliedly conceded. The defense of insanity implicitly says that the defendant committed the crime of which he is accused but should not be held accountable because he lacks the capacity to harbor criminal intent. This defense is the very antithesis of a defense which claims that the defendant is not the culprit. It is logically as inconsistent as alternative pleas of entrapment and denial of the commission of a crime which this circuit has proscribed. United States v. Crowe, 430 F.2d 670 (5th Cir. 1970); United States v. Pickle, 424 F.2d 528 (5th Cir. 1970); Marko v. United States, 314 F.2d 595 (5th Cir. 1963); cf., United States v. Harrell, 436 F.2d 606, pt. II, (5th Cir. 1970).[2] To say

2. Two other circuits have adopted a contrary view. As to entrapment vis-a-vis denial, *see* United States v. Harbin, 377 F.2d 78 (4th Cir. 1967). As to insanity as an alternative to denial, *see* Whittaker v. United States, 108 U.S.App.D.C. 268, 281 F.2d 631 (1960); *cf.* Johnson v. United States, 138 U.S.App.D.C. 174, 426

the least, the defendant in this case is in a poor position to now stress the government's failure to corroborate the fact that every identification witness it offered had an independent source for his identification from that of the photograph, because the defendant failed to object to any identifications made of him until all such identifications had been repeated many times over and the witnesses making them had, by agreement, been finally excused.

### III.

Even if we were to concede that showing witnesses a photograph of a general area which had been taken during the actual course of the commission of a crime and which happened to include a view of the accused, would amount to such a "line-up" as would require the presence of counsel for the defendant, we would nevertheless hold that under the facts presented and the procedures followed in this case any error was harmless beyond a reasonable doubt. Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

The judgment and commitment of Lorenzo Edward Ervin, Jr. is affirmed.

F.2d 651 (1970), which, while following *Whittaker*, notes that a jury would be hard put to reconcile such positions and at the same time grant to the defendant any credibility.