**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald Warren DRISCOLL, Defendant-Appellant.**

**No. 71–1273.**

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1972.

·794

Joseph A. Calamia, El Paso, Tex. (Court Appointed), for defendant-appellant.

Seagal V. Wheatley, U. S. Atty., Ralph E. Harris, Edward S. Marquez, Asst. U. S. Attys., El Paso, Tex., for plaintiff-appellee.

Before GEWIN, GOLDBERG, and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellant, Donald Warren Driscoll, was convicted by a jury and sentenced on six counts of causing the interstate transport of falsely made or forged securities with the knowledge that the securities were falsely made or forged and with unlawful or fraudulent intent, in violation of 18 U.S.C.A. § 2314.[1] Alleging that the district judge's charge to

the jury was incorrect and prejudicial, that his indictment was incorrect, that he was unconstitutionally prevented from testifying in his own behalf, that unconstitutional evidence was submitted to the jury, that the prosecutor's remarks to the jury were prejudicial, and that he was sentenced on the basis of too many offenses, Driscoll appeals. We agree with Driscoll's contentions regarding the trial judge's instructions and the imposition of sentence, and we reverse.

■ The disputed charge to the jury dealt with fraudulent intent. The trial judge instructed the jury on the relevant law of that subject as follows:

"[I]t is . . . reasonable to infer that a person ordinarily intend[s] all the natural and probable consequences of acts knowingly done or knowingly omitted, *so unless the evidence in the case leads the jury to a different or contrary conclusion,* the jury may draw the inference and find that the accused intended all the natural and probable consequences which one standing in like circumstances and

---

1. Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting

Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; or

Whoever, with unlawful or fraudulent intent, transports in interstate or for-

eign commerce any traveler's check bearing a forged countersignature; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security or tax stamps, or any part thereof—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

This section shall not apply to any falsely made, forged, altered, counterfeited or spurious representation of an obligation or other security of the United States, or of an obligation, bond, certificate, security, treasury note, bill, promise to pay or bank note issued by any foreign government or by a bank or corporation of any foreign country. June 25, 1948, c. 645, 62 Stat. 806; May 24, 1949, c. 139, § 45, 63 Stat. 96; July 9, 1956, c. 519, 70 Stat. 507; Oct. 4, 1961, Pub.L. 87–371, § 2, 75 Stat. 802; Sept. 28, 1968, Pub.L. 90–535, 82 Stat. 885.

18 U.S.C.A. § 2314.

possessing like knowledge would reasonably have expected to result from any act knowingly done or knowingly omitted by the accused."

[Emphasis added]. We hold that the emphasized portion of this charge was highly prejudicial to Driscoll in that it effectively shifted in the jury's mind the burden of proof regarding the crucial issue of fraudulent intent from the government to the defendant. The law of this court has been settled since another trial judge was reversed on the basis of the following instruction, also on the subject of fraudulent intent:

"It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. *So unless the contrary appears from the evidence,* the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused."

Mann v. United States, 5 Cir. 1963, 319 F.2d 404, 407, cert. denied, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474. [Emphasis added]. *See also* Henderson v. United States, 5 Cir. 1970, 425 F.2d 134. This court reversed a conviction on the basis of the above instruction, strikingly similar to that given by the trial judge to Driscoll's jury, explaining then that the cast of the emphasized portion was " . . . tantamount to an incriminating presumption which the jury, absent opposing evidence, could use as a substitute for proof." Mann v. United States, 319 F.2d at 408. The emphasized portion of the *Mann* charge was enough to lead this court in *Mann* to conclude that " . . . the burden of proof was thereupon shifted from the prosecution to the defendant to prove lack of intent." Mann v. United States, 319 F.2d at 409. The emphasized portion of the trial judge's charge to Dris-

coll's jury suffers from precisely the same malady.

█ Of course, our extraction from the charge is merely one part of an entire set of instructions, and the judge's instructions must be taken in the context of the entirety of their effects upon the jury. *See* Gurleski v. United States, 5 Cir. 1968, 405 F.2d 253, cert. denied, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769. However, this contextual approach does not relieve the trial judge of his heavy responsibilities in the area of instructing the jury on the applicable law. A judge's charge is reverentially received by the average jury, be it delivered extemporaneously or carefully scripted. Although such charge on appellate examination will be considered as a cosmos, we must nevertheless be certain that comets of unwisdom are deflected as the charge of the trial judge takes its orbital flight into the jury room. *See* Bollenbach v. United States, 1946, 326 U.S. 607, 66 S.Ct. 402, 90 L. Ed. 350.

In Driscoll's case the portion of the charge extracted might well be reflective of the entirety of the charge. While the trial judge did give other instructions on the question of fraudulent intent, we conclude that the additions only compounded the prejudice. The trial judge returned to the intent question in the following terms:

"The evidence is practically undisputed, but the question is the inference to be drawn from it. . . . You [the jury] have a right to find a person not guilty if you want to, even though the evidence points to his guilt, that's—comes in your right, but as a fair and impartial juror, fair to the government, fair to the public, if the evidence has established in your mind beyond a reasonable doubt, then you should find a verdict of guilty against the defendant."

By advising the jury that it was free to return a verdict of not guilty "even

though the evidence points to his guilt," following closely on the heels of the intent charge complained of earlier, the trial judge added substantially to our fears that the jury envisioned the burden of proof as resting on Driscoll.

■ Moreover, even if part of a charge be taken within the context of the whole, if that part so overwhelms the fairness and efficacy of the entire charge, then obviously a conviction based on that charge cannot stand. We conclude that the trial judge's statement regarding production of evidence on the question of fraudulent intent had precisely that overwhelming effect. The trial judge himself pointed out in his instructions, correctly we believe, that the question of guilt or innocence in Driscoll's case really sifted down to the issue of fraudulent intent.

"Now, there's no dispute—Mr. Calamia [Driscoll's counsel] stated in his argument to you and clearly so that the check was transported and caused to be transported, so that essential part of the indictment [is] complied with. It was a false and forged security. There's no question about that. That has been clearly established, that it was a falsely made and forged security, and it leaves the question of whether or not the defendant unlawfully—with unlawful and fraudulent intent transported, did transport or cause to be transported falsely, and which said check is alleged to—was to his knowledge falsely made and forged, *so that's what you get down to in this case.*"

[Emphasis added]. This part of the charge can be understood to conclude that fraudulent intent was the only real issue in Driscoll's case. That conclusion is entirely correct, given the fact that other necessary elements of the crime were either admitted or very clearly established. The fact that the burden of proof was shifted to Driscoll on a crucial issue in the case and the fact that the crucial issue in question was the subjec-

tive issue of intent are important appellate tests which the trial judge's charge has utterly failed to pass:

"Such a [shifted] burden is especially harmful when a person is required to overcome a presumption as to anything subjective, such as intent or wilfulness, and a barrier almost impossible to hurdle results."

Mann v. United States, 319 F.2d at 409; compare Helms v. United States, 5 Cir. 1964, 340 F.2d 15. The fact that the trial judge made other references in his charge to the burden of proof does not salve what was a fatal wound to the conditions of the trial with regard to the issue of intent:

"Even though the trial judge did give an accurate charge on the necessity of intent and the burden of proof, we hold that to leave the jury with that part of the charge complained of in this case was not cured by what was said elsewhere in the charge. Instructions to the jury must be consistent and not misleading. The fact that one instruction is correct does not cure error in giving another inconsistent one."

Mann v. United States, 319 F.2d at 410. *See* Perez v. United States, 5 Cir. 1961, 297 F.2d 12. Because the charge in its entirety was prejudicial in that it effectively shifted the burden of proof regarding fraudulent intent from the government to the defendant, Driscoll, we reverse the conviction that was returned on the basis of that charge.

■ In his second contention, Driscoll argues that he was incorrectly indicted, or, more appropriately, that he was not tried for the offense on which he was indicted. The indictments against Driscoll charged him generally with fraudulent interstate transport of "securities," as set forth in paragraph three of 18 U. S.C.A. § 2314, *supra* note 1, but charged him specifically with fraudulent interstate transport of specific traveler's checks knowingly falsely made and

forged.[2] Driscoll's actual offense was the fraudulent interstate transport of a "traveler's check bearing a forged countersignature," as set forth in paragraph four of 18 U.S.C.A. § 2314, *supra* note 1. Driscoll raises the issue entirely on the basis of Streett v. United States, 8 Cir. 1964, 331 F.2d 151, which held that a traveler's check with the genuine signature of the original owner attached was a complete security, and, therefore, that a forged countersignature could not make the instrument a "forged security" within the ambit of paragraph three of the Code provision. *But cf.* Berry v. United States, 5 Cir. 1959, 271 F.2d 775, cert. denied, 362 U.S. 903, 80 S.Ct. 612, 4 L.Ed.2d 555; United States v. Di Pietto, 7 Cir. 1968, 396 F.2d 283, vacated on other grounds, 394 U.S. 310, 89 S. Ct. 1163, 22 L.Ed.2d 297. In response to *Streett*, Congress amended 18 U.S.C.A. § 2314 in 1968 to include paragraph four within the proscriptions of the general code provision, making unlawful the fraudulent interstate transport of a "traveler's check bearing a forged countersignature." Driscoll argues that the use of the term "security" in the indictments, notwithstanding the specific delineation of each allegedly forged traveler's check, rendered the indictments insufficient under law, and that the conviction must be reversed on the basis of that insufficiency. *See* Walker v. United States, 5 Cir. 1965, 342 F.2d 22, cert. denied, 382 U.S. 859, 86 S.Ct. 117, 15 L. Ed.2d 97.

 It is clear that an indictment must include all essential elements of an offense. *See* F.R.Crim.P. 7(c); U.S. Const. amends. V, VI; United States v. Debrow, 1953, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92. The criteria that a re-

viewing court must use to test the sufficiency of an indictment are set out most clearly in Russell v. United States, 1962, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240: (1) sufficient notice to the defendant regarding what he must be prepared to refute, and (2) sufficient clarity that the defendant cannot be put in jeopardy again for the same offense. This court has also explained a third underpinning to the law's demand for a clear indictment: "the protection of the citizen against unfounded charges." Van Liew v. United States, 5 Cir. 1963, 321 F.2d 664, 669. It is against these criteria that we must test Driscoll's indictments, and we conclude that the indictments pass the tests.

The essential elements of section 2314 as they relate to Driscoll's offense are (1) interstate transport of traveler's checks on which a countersignature had been forged (2) with intent. By specifically stating the numbers and approximate dates of passage of the traveler's checks, the section of the Code transgressed, and the requisite element of fraudulent intent, the indictments adequately assured that the government's charges were not unfounded and adequately protected Driscoll " . . . against any surprise from the proof presented by the Government." United States v. Auerbach, 5 Cir. 1969, 420 F. 2d 921, 923, cert. denied, 399 U.S. 905, 90 S.Ct. 2195, 2196, 26 L.Ed.2d 560. *See also* Estes v. United States, 5 Cir. 1964, 335 F.2d 609, cert. denied, 379 U. S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559; United States v. Grayson, 5 Cir. 1969, 416 F.2d 1073, cert. denied, 396 U.S. 1059, 90 S.Ct. 754, 24 L.Ed.2d 753; James v. United States, 5 Cir. 1969, 416 F.2d 467, cert. denied, 397 U.S. 907, 90

---

2. "That on or about February 29, 1970, DONALD WARREN DRISCOLL, with unlawful and fraudulent intent, transported and caused to be transported in interstate commerce, from the Western District of Texas, to the State of California, a certain falsely made and forged security, to wit: Bank of America Travelers Cheque Number 559 461 134, drawn on the National Trust

and Savings Association, San Francisco, California, in the amount of $20.00, payable to Don Driscoll and signed Joel Sontag, which said Travelers Cheque was to his knowledge falsely made and forged."

Six similar indictments were returned by the Grand Jury, differing only in the numbers and the dates of passage.

S.Ct. 902, 25 L.Ed.2d 87. In fact, Driscoll *stipulated* to the numbers and dates of passage of each of the six traveler's checks that formed the basis of the indictments and the convictions. It is also clear to this court that Driscoll's conviction under 18 U.S.C.A. § 2314 on the basis of an indictment that specifically denotes the numbers and dates of passage of each of the traveler's checks on which the conviction and sentencing rested unquestionably blocks any possibility that Driscoll might again be tried for the same offense.

 In addition, the government, by stating "security" generally and the delineated traveler's check specifically, essentially stated Driscoll's indictments by conjoining paragraphs three and four of 18 U.S.C.A. § 2314. This court has previously made clear that the government may state its indictment in the conjunctive, if the statute under which it is indicting is reasonably stated in the conjunctive:

> "Where a statute specifies several alternative ways in which an offense can be committed, the indictment may allege the several ways in the conjunctive, and a conviction thereon will stand if proof of one or more of the means of commission is sufficient."

Fields v. United States, 5 Cir. 1969, 408 F.2d 885, 887. The conjunctive approach to the indictment, *supra* note 2, is particularly appropriate in light of the amended inclusion of paragraph four into the original Code provision in response to the *Streett* decision. It is ob-

vious that Congress considers Driscoll's offense within the perimeters of 18 U.S.C.A. § 2314 as a whole. Compare United States v. Beard, 5 Cir. 1971, 436 F.2d 1084.

To invalidate Driscoll's conviction on the basis of an insufficient indictment would be to warp the concept of legal form, and then to place that warped form well above the substance of the subject of indictment. This we decline to do. The numerology and alphabetizing of a statute are its peripheries. We look beyond to see if the indicting facts allege a core of guilt within the statute's criminating words. We conclude that, under *Russell* and its predecessors and under *Fields*, Driscoll's indictment was sufficient.

As his third allegation of error, Driscoll complains that he was prevented from taking the stand in his own behalf because the government threatened to impeach his credibility on the basis of his conviction of a Texas misdemeanor and because the trial judge concluded that he would allow such impeachment evidence to be admitted. There is some dispute regarding whether the government's threatened impeachment was the real reason for Driscoll's failure to take the stand, but without passing on that dispute, we conclude that the government's threat to impeach was entirely within its prerogative.

 Driscoll argues that his prior conviction was "dismissed" under Article 42.13 of the Vernon's Ann. Texas Code of Criminal Procedure,[3] and that

---

3. Effect of probation
 Sec. 4. (a) When a defendant is granted probation under the terms of this Act, the finding of guilt does not become final, nor may the court render judgment thereon, except as provided in Section 6 of this Article.
 (b) The court shall record the fact and date that probation was granted on the docket sheet or in the minutes of the court. The court shall also note the period and terms of the probation, and the details of the judgment. The court's records may not reflect a final conviction, how-

ever, unless probation is later revoked in accordance with Section 6 of this Article.
 \* \* \* \* \*
Discharge from probation
 Sec. 7. (a) When the period and terms of a probation have been satisfactorily completed, the court shall, upon its own motion, discharge him from probation and enter an order in the minutes of the court setting aside the finding of guilty and dismissing the accusation or complaint and the information or indictment against the probationer.

Texas case law would prohibit introduction of the "dismissed" conviction for purposes of impeachment. We do not pass on the merits of Driscoll's allegations regarding Texas decisional law. We simply note that Driscoll was indicted and tried entirely for violation of federal law. This court has squarely faced Article 42.13 in a similar situation involving entirely federal law:

> "The manner in which Texas chooses to deal with a party subsequent to his conviction is simply not of controlling importance insofar as a deportation proceeding—a function of federal, not state, law—is concerned. We agree with the Ninth Circuit that '[i]t would defeat the purpose . . . [of federal law] if provisions of local law, dealing with rehabilitation of convicted persons, could remove them from the ambit of [federal penal enactments].'"

Gonzalez de Lara v. United States, 5 Cir. 1971, 439 F.2d 1316, 1318–1319. De la Cruz-Martinez v. Immigration and Naturalization Service, 9 Cir. 1968, 404 F.2d 1198, cert. denied, 394 U.S. 955, 89 S.Ct. 1291, 22 L.Ed.2d 491, quoting from Reyes v. United States, 9 Cir. 1958, 258 F.2d 774. Driscoll relies extensively, if not exclusively, on Mickler v. Fahs, 5 Cir. 1957, 243 F.2d 515. *Mickler*, however, is not in point. The convicted appellant in *Mickler* had entered a plea of nolo contendere in an earlier indictment, and the government raised in a subsequent case his conviction on the basis of that plea. This court held that, under the *Mickler* circumstances, the former conviction could not be used to impeach the defendant at the later trial. However, the rationale of that case is quite different from that which Driscoll argues here. The decision in *Mickler* was based on the court's conclusion that " . . . a plea of nolo contendere is a mere statement of unwillingness to

contest and no more." 243 F.2d at 517. Obviously, an actual conviction is quite a different matter, whether or not that conviction is ultimately expunged by the state. Gonzalez de Lara v. United States, *supra*; Gurleski v. United States, *supra*. The trial judge's ruling that he would not prevent the government from impeaching Driscoll on the basis of Driscoll's prior state conviction and the government's announced intention to impeach Driscoll on that basis were within the respective discretions of the trial judge and the government.

Driscoll's fourth allegation is that he was denied due process of law when the district judge declined to retire the jury before passing on Driscoll's objection to the fairness of a "picture spread" identification that was introduced into evidence by the government. Driscoll contended in the court below that an in-court identification by one witness was inextricably interwoven with the witness' earlier station house identification of Driscoll by a picture spread, and that the out-of-court picture spread was impermissibly suggestive. Driscoll bases his argument on this court's decision in United States v. Sutherland, 5 Cir. 1970, 428 F.2d 1152. In *Sutherland* this court held that the trial judge had committed reversible error by allowing identification evidence from an improper picture spread to go to the jury, and suggested the following procedure:

> "Prior to offering the in-court identification before the jury, the trial judge should be accorded an opportunity out of the presence of the jury to determine if the picture spread in the particular case was impermissibly suggestive either in the photographs used or the manner or number of times they are displayed. If the judge makes such a determination, he then should determine if the imper-

(b) After the case against the probationer is dismissed by the court, his finding of guilty may not be considered *for any purpose* except to determine his entitlement to a future probation under this Act, or any other probation Act.
42.13 Texas Code Ann. §§ 4, 7.

missibly suggestive picture spread gives rise to a 'likelihood of irreparagle misidentification.' "

United States v. Sutherland, 428 F.2d at 1155. In suggesting that procedure this court was following the guidelines of Simmons v. United States, 1968, 390 U. S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. We agree with Driscoll that the trial judge should have followed the suggested *Sutherland* procedure by retiring the jury before he made his findings regarding the propriety of the picture spread. By not doing so the trial judge took a considerable risk of constitutional violation, and of course reversal, on the basis of *Simmons*.

Driscoll's case, however, is substantively distinguishable from *Sutherland*. In *Sutherland* the appellant was convicted *entirely* on the basis of an in-court identification, which the trial judge found to have been inextricably based on a station house picture spread. The *Sutherland* trial judge also found that the picture spread was " 'illegal, improper, and should not have been done,' " and that the spread "created a 'considerable chance that the procedures utilized led to misidentification of the defendant,' " United States v. Sutherland, 428 F.2d at 1155; yet the trial judge allowed the question of identification to go to the jury. Under those circumstances this court concluded that it was reversible error to allow the tainted identification question to go to the jury at all. But this Court also made clear that for an in-court identification to be deemed unconstitutionally based, the trial judge must find both that the picture spread was unconstitutionally suggestive and that there was a "very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. at 384, 88 S.Ct. at 971. The only finding by the trial judge in Driscoll's case is the rather conclusory one that

" . . . the witness was very positive in his examination and close contact he had with him [Driscoll]. There's no doubt in the Court's mind of the identification so far as he [the witness] was concerned was fair and reasonable."

Cryptic though it is, it is nevertheless a finding that there was not a "very substantial likelihood of irreparable misidentification" of Driscoll by the witness in question. It appears to us that the record supports that finding. The witness had considerable contact with Driscoll, and in such circumstances that it is reasonable to believe that he would have a lasting memory of Driscoll's physical features.[4] The failure to retire the jury before determination of the picture spread issue was not, in these circumstances, reversible error.

■■■■ Driscoll's fifth argument is that the prosecutor unlawfully commented upon Driscoll's failure to take the stand in his behalf. *See* Griffin v. California, 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. It is true that oblique comments on a defendant's failure to testify, if sufficiently suggestive, are as unlawful as direct comments. *See* Carlin v. United States, 5 Cir. 1965, 351 F. 2d 618; Benham v. United States, 5 Cir. 1954, 215 F.2d 472. Driscoll submitted a statement to the F.B.I. prior to his trial concerning his admitted possession of the stolen and forged traveler's checks. That statement, which offered some explanation and defense of his possession, was admitted at the trial without objection by Driscoll, and Driscoll does not now claim that the admission of his exculpatory statement was "plain er-

---

4. The witness testified that he received a credit card from a customer for the purpose of paying for some clothing. The witness then telephoned a central authorization office, received word that the card had been reported as stolen, and requested that the would-be purchaser leave the store. The occurrence was enough out of the ordinary that it is reasonable to believe that a witness could have a recollection quite independent of a picture spread identification. In addition, the record establishes that the witness on the stand was quite positive in his in-court identification.

ror." F.R.Crim.Pro. 52(b). It appears to us that the prosecutor's remarks are so oblique that they cannot be deemed suggestive of Driscoll's failure to take the stand,[5] and that their entire reference is to Driscoll's own attempt to exculpate himself by means of the written statement.

Driscoll's final argument is that he was sentenced on six separate counts when he was actually convicted of only three offenses. The issue arises because there were six separate checks in evidence, but only three separate instances of passing them. In these circumstances there would be only three violations of 18 U.S.C.A. § 2314, the three separate instances at which the checks were "transported" within the meaning of the Code provision. Gilinsky v. United States, 9 Cir. 1966, 368 F.2d 487. In its brief before this court the government admits that only three offenses occurred. It appears that Driscoll was given the maximum sentence on each of the six counts found by the court below. Since several sentences arising from what should have been a lesser number of offenses, even if the sentences are concurrent, would be prejudicial to the defendant by reducing his opportunities for earlier parole or pardon, the sentence was erroneous. *See* Holland v. United States, 5 Cir. 1967, 384 F.2d 370.

Despite the insufficiencies of most of Driscoll's substantive contentions regarding his conviction, we conclude that Driscoll is correct in contending that the jury charge of the trial judge on the substantively crucial issue of fraudulent intent was misleading and prejudicial. For that reason the conviction must be reversed.

---

5. "And you [the jury] had—not had a satisfactory explanation from any source." "If he [Driscoll] did not know these instruments [the checks] were stolen, how does he explain himself being in possession of a credit card in the name of Howard Gillman and presenting it to Mr. Marchese at Bassett Union Fashion?" "And then we get down to the point the defendant simply cannot explain, being in the Union Fashion at Bassett and presenting that card to Mr. Marchese."