[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16930
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cr-00209-PGB-TBS-2


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DERMA MILLER,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 18, 2018)

Before MARCUS, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Derma Miller[1] appeals her convictions for three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A.  On appeal, Derma argues the district court erred when it answered a jury question by providing the jury with the pattern instruction defining "possession."

I.

The superseding indictment charged Derma and her mother, Virginia, with one count of conspiracy to steal and convert government money, in violation of 18 U.S.C. § 371; three counts of theft of government funds, in violation of 18 U.S.C. § 641; and three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and (b).  The substantive counts alleged the Millers used the identities of F.T., M.S., and J.K. to file false tax returns for 2010 and get refunds.  With respect to the aggravated identity theft counts, Derma was charged with aiding and abetting her mother.

Derma went to trial.  The government introduced evidence that Virginia prepared fraudulent tax returns using stolen identities for tax years 2008, 2009, and 2010, including for F.T, M.S., and J.K.  The tax refunds were then directly deposited into an account opened and solely controlled by Derma at Trustco Bank called "Derma Miller DBA Derma."  Of the $568,609 deposited into the account

---

[1] Because this case involves several members of the Miller family, we will refer to them by their first names.

2

from February 2009 to February 2011 from tax refunds, the Millers took at least $396,711 for themselves.[2]

The government showed that Derma regularly wrote large checks to herself and her family from this account, made large cash withdrawals, and used the money in the account to pay for personal expenses. For example, from January 28, 2011 to February 11, $126,373.14 in tax refunds was deposited into Derma's bank account. In the same time period, Derma withdrew $84,977. Of this amount, $26,000 was withdrawn in cash; $31,334 by check payable to Virginia; $5,754 by check payable to Brandi, her sister; $15,900 by check to Benny, her father; and $2,000 by check payable to Benny Jr., her brother. After the bank became suspicious that the deposited tax returns were fraudulent, the account was closed on February 17, 2011.

Derma testified that she opened the account and made the withdrawals on Virginia's instruction, and otherwise had nothing to do with the tax-preparation business.

Before the jury began its deliberations, the district court instructed them on aggravated identity theft:

It is a federal crime to commit aggravated identity theft.

---

[2] 98.6% of deposits into the Trustco account were from tax refunds. However, not all the refunds were from fraudulent tax returns and some refunds were disbursed to clients. To calculate the amount stolen, the government excluded checks made out to a client, as well as checks to Virginia or Derma where the memo line listed a client name and there was a corresponding tax-refund deposit.

3

Defendant Derma Miller can be found guilty of that offense if all of the following facts are proved beyond a reasonable doubt:

(1) The Defendant knowingly transferred, possessed, or used another person's means of identification;

(2) Without lawful authority; and

(3) During and in relation to the theft of government money.

The Government must prove that Defendant Derma Miller knowingly transferred, possessed, or used another person's identity "without lawful authority." The Government does not have to prove that the Defendant stole the means of identification, only that there was no legal authority for the Defendant to transfer, possess, or use them.

The Government must prove that the Defendant knew that the means of identification, in fact, belonged to another actual person living or dead and not a fictitious person. A means of identification includes a name, Social Security number, or date of birth.

Further, the Government must prove that the means of identification was possessed "during and in relation to" the crime specified in the superseding indictment, that is theft of government property. The phrase "during and in relation to" means that there must be a firm connection between Defendant Derma Miller, the means of identification, and the crime specified in the superseding indictment. The means of identification must have helped with some important function or purpose of the crime and not simply have been there accidentally or coincidentally. The means of identification must at least facilitate, or have the potential of facilitating, the crime specified in the count of the superseding indictment.

During jury deliberations, the jury asked, "If a check is deposited into an account, [t]hat check contains the identity information. Does the owner of that account, then 'possess' the identity information[?]" The district court determined

4

answering the question directly would improperly decide a question reserved for the jury and telling the jurors to use their common sense may mislead them because "the law often determines and defines words in unique and special ways." The court thus believed it was better to give the jury the pattern instruction defining "possession" because it's a "blanket instruction" setting out "basic principles." That instruction says:

> The law recognizes several kinds of possession. A person may have actual possession, constructive possession, sole possession, or joint possession.

> "Actual possession" of a thing occurs if a person knowingly has direct physical control of it.

> "Constructive possession" of a thing occurs if a person does not have actual possession of it, but has both the power and the intention to take control over it later.

> "Sole possession" of a thing occurs if a person is the only one to possess it.

> "Joint possession" of a thing occurs if two or more people share possession of it.

> The term "possession" includes actual, constructive, sole, and joint possession.

Derma objected, arguing "the charge of identity theft ha[d] already taken place when . . . Virginia [] took that information and filed it with the IRS." Derma added that she didn't think "a check being deposited into an account gives possession of identity to the accountholder." The district court said this was an

5

argument about whether "the facts of the case support possession," which was "not a discussion that [the court] can have with the jury." The court decided to give the instruction. The parties then requested the court include references to two other instructions. Fearing this may cause the jury to disregard other instructions, the court added the jury should read the possession instruction "in conjunction with the Court's previous instruction on the law."

About an hour after the jury received its answer, it returned a guilty verdict on all counts. Derma then filed a motion for new trial, arguing the district court erred in answering the jury's question with the possession instruction. After the government responded, the district court denied the motion. Derma was sentenced to 60-months imprisonment for the conspiracy and theft counts, and a consecutive 24 months for the aggravated identity theft counts. This appeal followed.

## II.

"We review jury instructions de novo to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." United States v. Myers, 972 F.2d 1566, 1572 (11th Cir. 1992). However, we give district courts "wide discretion as to the style and wording employed," Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1276 (11th Cir. 2008), and in how they respond to a jury question, United States v. Lopez, 590 F.3d 1238, 1247–48 (11th Cir. 2009). This Court "will not reverse a conviction on the basis of a jury charge unless the

issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." United States v. Isnadin, 742 F.3d 1278, 1296 (11th Cir. 2014) (quotation omitted).

When answering a jury question, "the court should be especially careful not to give an unbalanced charge." United States v. Sutherland, 428 F.2d 1152, 1157 (5th Cir. 1970).[3] The court should remind the jury "that all instructions must be considered as a whole or take other appropriate steps to avoid any possibility of prejudice to the defendant." Id. at 1158. "A challenged supplemental jury instruction is reviewed as part of the entire jury charge, in light of the indictment, evidence presented and argument of counsel to determine whether the jury was misled and whether the jury understood the issues." United States v. Johnson, 139 F.3d 1359, 1366 (11th Cir. 1998) (quotation omitted).

### III.

On appeal, Derma notes the tax refunds were deposited in her bank account by wire transfer, not physical checks. She argues the jury's question about check deposits showed confusion about the facts, and the court's possession instruction added to the jury's confusion by incorrectly describing the wired funds "as a thing

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

or other matter subject to being possessed." Derma does not argue the court incorrectly defined "possession" or the elements of aggravated identity theft.

The district court did not abuse its discretion in answering the jury's question with the possession instruction. The jury's question indicated confusion about the meaning of possession, not about whether it was possible to possess identity information or a check. As the court noted, the possession instruction sets out basic principles that are familiar to lawyers, but may be unfamiliar to lay people. For example, while lay people might think "possession" refers to physically holding things, the instruction clarifies that possession can also be constructive, based on power and intent. That the jury was able to reach a verdict within an hour of the court's answer suggests the possession instruction was responsive to their question. See id.

Beyond that, the district court was "especially careful not to give an unbalanced charge." Sutherland, 428 F.2d at 1157. The court understood that answering the jury's question with a "yes" or a "no" might improperly dictate their conclusion about whether the facts supported the aggravated identity theft charges. And the court properly avoided referring to any particular instruction, instead directing the jury to consider the supplemental instruction along with the others already given. See id.

8

Finally, we review de novo the supplemental instruction with the rest of the record to determine if the instruction so misled the jury as to violate Derma's due process. See Isnadin, 742 F.3d at 1296. Derma was charged with aiding and abetting aggravated identity theft. The jury was thus required to decide whether Derma intentionally helped her mother commit aggravated identity theft, even if she didn't personally perform every act necessary to commit the crime. See Rosemond v. United States, 572 U.S. ___, 134 S. Ct. 1240, 1245 (2014) ("As at common law, a person is liable under [18 U.S.C.] § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission."). Aggravated identity theft isn't complete unless the stolen identities were possessed in relation to or during another crime, here, theft of government funds. The government introduced evidence that Virginia prepared fraudulent tax returns using stolen identities for tax years 2008, 2009, and 2010, including for F.T, M.S., and J.K. The jury's guilty verdict as to the conspiracy count shows it rejected Derma's testimony that she was an unwitting and unwilling participant. And Derma's opening of the Trustco bank account to receive the tax refunds and her withdrawals on the account to pay herself, her family, and her personal expenses, show that she committed theft of government funds. At bottom, the jury had sufficient facts to determine Derma aided and abetted aggravated identity theft without relying on the nature of the

9

refunds as wire transfers or check deposits.  Therefore, there is no indication the supplemental possession instruction so misled the jury as to violate due process. See Isnadin, 742 F.3d at 1296.

**AFFIRMED.**