**Marvin T. WARD, a/k/a Moses Anderson, Petitioner-Appellee,**

**v.**

**Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent-Appellant.**

**No. 71-1649**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Nov. 3, 1971.

Rehearing Denied Dec. 15, 1971.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.

**410**

Robert L. Shevin, Atty. Gen. of Fla., Wallace E. Allbritton, A. S. Johnston, Asst. Attys. Gen., Tallahassee, Fla., for respondent-appellant.

Samuel S. Jacobson, Jacksonville, Fla. (Court Appointed), for petitioner-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In this habeas corpus proceeding the district court vacated petitioner's robbery conviction, basing its disposition solely upon an examination of the state court trial record. The premise underlying this grant of relief was: "Petitioner was denied due process of law in his state trial in that the totality of the circumstances surrounding the identification evidence creates a substantial likelihood of an incorrect identification." We disagree with this conclusion and reverse.

On the night of March 11, 1967, Thomas W. Valentine was robbed and shot in a lighted urban area by three assailants. At the habeas petitioner's trial for these crimes in the criminal court of Duval County, Florida, on July 31, 1967, Valentine recounted the encounter in vivid detail. Upon leaving his store, he was accosted by the three, one of whom asked him for a quarter. When he refused the request, he was then asked for street directions, which he gave. Becoming fearful, Valentine began to run; whereupon, the petitioner-defendant pulled a 22-caliber pistol and all three footpads gave chase. After they cut off Valentine's flight, the defendant stood directly in front of him and waved the pistol within four inches of Valentine's nose. Defendant struck him in the mouth with his fist and at times had his face as close as two or three feet from Valentine's face. According to Valentine, defendant was not wearing a hat or mask and the street light was sufficient to enable Valentine to positively identify him as one of his robbers. The entire affair covered an interval of nine or ten minutes. In addition to unhesitatingly pointing out the defendant in the courtroom, Valentine twice testified in the most positive of terms that

he had no doubt whatsoever that Melvin Ward, alias Moses Anderson, was the same person who robbed and shot him on that evening.

The basis for the habeas corpus proceeding was Valentine's further testimony concerning his identification of the defendant at the county jail, which identification occurred about midway in time between the crime and the trial. He stated he was requested to come to the police station to determine if he could identify a person in custody as the one who robbed and shot him. Upon his arrival at the jail, Valentine was taken to a corridor where the defendant and a person of another race were presented to him for purposes of identification. Valentine confirmed to the officer present that the defendant was the culprit. Both the police officials and Valentine testified that the custodial identification was made without prompting, hesitation, or doubt. The defendant took the stand and, after denying participation in the commission of the crimes, stated that while incarcerated he was requested to participate in a line-up but refused to do so. Following his refusal, he was taken alone into a corridor for a one-man show-up to Valentine. He further testified that the officer who brought Valentine to his presence repeatedly and insistently requested Valentine to identify the defendant as the man who robbed him.

It appears without conflict in the trial court record that Valentine was informed prior to the jail corridor confrontation that the defendant had refused to participate in an ordinary line-up with other persons of generally similar physical appearance. Valentine was also told prior to the identification procedures that the man he would be shown was then being held on a charge of breaking and entering the premises of another person located in the same building housing his business. Finally, the transcript discloses that during Valentine's direct testimony the prosecutor elicited testimony from him about the jailhouse show-up identification.

 It is of significance that the attorney for the defendant not only did not object to the action of the prosecutor in developing the line of inquiry about the jailhouse identification in the presence of the jury, but defense counsel himself pursued and fully developed the matter in their presence by his cross-examination of Valentine and the police officer who handled the confrontation, as well as on the direct examination of defendant. At the conclusion of the state's case, defendant moved for a directed verdict on the ground that the only identification evidence was that of Valentine, and that the officers who investigated the crime had not been called. We do not fault this procedure. *Cf.* United States v. Hathorn, 451 F.2d 1337 (5th Cir. 1971). The trial judge denied his motion on the grounds that a jury issue was presented. Additionally, the court aptly noted that no attempt had been made to develop any distinguishing physical characteristics (or lack of them) possessed by the defendant which would have facilitated (or hindered) jailhouse or courtroom identification.

At the conclusion of all of the proof, defendant's counsel again moved for a directed verdict, this time on the basis that Valentine's demeanor on the stand disclosed that he was confused. The court denied the motion for the reason that this presented only a credibility question for the jury to assess. Counsel was advised to press in his closing argument his belief that the evidence was weak. The court's formal jury instructions detailed the state's burden to prove its case beyond a reasonable doubt and defined the legal elements of the crimes involved. Defense counsel made no request for any particular instruction on identification and, though given the opportunity to do so, made no objection that the charges given were deficient in this regard.

 The jailhouse show-up took place on May 26, 1967. On June 12, 1967, the Supreme Court decided, in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and in Gil-

bert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, that such a line-up as took place here was a critical stage in criminal proceedings at which the accused was constitutionally entitled to have counsel present. However, on that same day, in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the court held that the retroactivity of *Wade* and *Gilbert* would be limited to those two defendants. Thus, the right to counsel at such pretrial confrontations is not applicable in the case at bar. As correctly defined by the trial court, the sole issue in this cause is whether such jailhouse procedures and the introduction of evidence thereof at the defendant's trial so tainted the identification issue as to require habeas corpus relief under Part II of Stovall v. Denno, *supra*, and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Restated, the *Stovall* and *Simmons* rule is that a claimed violation of due process of law in the conduct of pretrial identification procedures depends upon whether the totality of the circumstances surrounding the identification discloses such procedures were so unnecessarily or impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The jail corridor show-up in the case at bar, whether consisting of the defendant alone or the defendant together with another person of dissimilar appearance, was no less than impermissibly suggestive—particularly when it was preceded by information that the person to be exhibited had refused to participate in a broader line-up procedure and had then been incarcerated on a burglary charge arising in the immediate vicinity of the previous crime. It was also improper trial procedure for the state prosecutor to introduce the fact of such custodial identification. Coming as it did after a positive identification of the defendant, it could only have served to erroneously bolster a key point in his case.

▮ Our examination of the state court record leaves us with the definite and firm conviction that he was mistaken in reaching the ultimate fact conclusion upon which his relief was based. Rewis v. United States, 445 F.2d 1303 (5th Cir. 1971). Since the habeas court considered only the same inanimate printed words which are before us on this review, the usual stringency of the Fed.R.Civ.P. 52(a) clearly erroneous standard is ameliorated. United States v. Jacksonville Terminal Co., 451 F.2d 418 (5th Cir. 1971); Bar L. Ranch v. Phinney, 426 F.2d 995 (5th Cir. 1970); American National Bank of Austin v. United States, 421 F.2d 442 (5th Cir. 1970).

▮ We conclude the record discloses that the robbery encounter itself provided a so much more reliable source of Valentine's positive in-court identification than the suggestive jailhouse line-up, that we can safely conclude the latter created no likelihood of any substance that Valentine's positive courtroom recognition of the defendant was mistaken. The whole street encounter brought Valentine into close physical contact with his assailant, both in casual conversation and in the intimidating circumstance of a pistol-point hold-up for a relatively long time interval in a lighted area, so that sure identification was possible. On the other hand, the jail corridor view consisted of a brief contact during which Valentine's appearance gave both the officer and the defendant the impression that Valentine was frightened. The record not only does not show that Valentine studied the defendant's facial or physical characteristics at the jail in order to create or retain the ability to point him out at a later trial but, rather, indicates the custodial confrontation was only long enough to assure the officer that Valentine believed defendant was the criminal. The interval of time from the crime to the show-up, March 11 to May 26, was almost identical to the interval between show-up and trial, May 26 to July 31. The time factor, which could be important in causing misidentification, is virtually neutral here. We deduce from ex-

amining the entire record that the substantial likelihood is that the show-up, although impermissibly suggestive, did not taint the in-court identification. Fitts v. United States, 406 F.2d 518 (5th Cir. 1969); cf. United States v. Sutherland, 428 F.2d 1152 (5th Cir. 1970). See also United States v. Elliott, 437 F.2d 1253 (5th Cir. 1971); United States v. Ervin, 436 F.2d 1331 (5th Cir. 1971); Terry v. Peyton, 433 F.2d 1016 (4th Cir. 1970); Vance v. State of North Carolina, 432 F.2d 984 (4th Cir. 1970). The fact that the evidence of the improper show-up went to the jury, without objection, does not amount to an error of federal constitutional dimension.

We accordingly reverse the judgment appealed from and direct that the petition for writ of habeas corpus be denied.

Reversed and remanded, with directions.