**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leonard JOHNSON and Levi Washington, Defendants-Appellants.**

**No. 30681.**

United States Court of Appeals, Fifth Circuit.

June 12, 1972.

Darryl J. Tschirn, New Orleans, La., for Johnson.

Levi Washington, pro se.

Gerald J. Gallinghouse, U. S. Atty., Patrick C. McGinity, Asst. U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

Leonard Edward Johnson and Levi Washington appeal from their convictions for the offense of bank robbery in violation of 18 U.S.C. § 2113(a) and (d). As to appellant, Washington, we affirm. Because we believe that appellant Johnson's due process rights were violated by subjecting him to a prejudicial out-of-court identification procedure, we must reverse his conviction.

On July 14, 1967, a branch of the Hibernia National Bank in New Orleans, Louisiana, was robbed of $13,949. Miss Fay Littlejohn, one of the tellers at the bank, testified at the trial that two men entered the bank at approximately 10:15 a. m. One of the men approached her window and handed her a paper bag with a note demanding large bills. After being threatened with a gun, Miss Littlejohn gave the robber money from her cash drawer, and the robber left. When Miss Littlejohn turned to the teller next to her, Mrs. Elma Cwik, for help, she noticed that Mrs. Cwik was also being robbed. Miss Littlejohn testified that she observed the man who robbed her window for "about a minute" and the man who robbed Mrs. Cwik's window for "around twenty seconds or so". Mrs. Cwik testified at trial about the details of the robbery. Mrs. Cwik did not observe the man who robbed Miss Littlejohn but testified that she observed the man who robbed her window for "a couple of minutes".

Miss Littlejohn and Mrs. Cwik were asked to view photographs of suspects "several times". During one of the viewings, Mrs. Cwik tentatively identified appellant Washington as the man who robbed her window. Miss Littlejohn was shown a series of photographs at police headquarters soon after the robbery. On September 25, 1967, two months after the robbery, she was again shown a series of photographs and selected the photograph of one Earl Elvin Payton. The F.B.I. agent's report of that viewing reflects that Miss Littlejohn stated that Payton "looked enough like the individual who robbed her teller window to be identical with the robber". Again on October 28, 1967, Miss Littlejohn was shown a series of photographs and selected one. On this occasion she selected a photograph of one Robert

Jones and, according to the F.B.I. report, said, "this is very close to what I recall the robber looked like". On December 6, 1967, Miss Littlejohn again viewed a series of photographs and, this time, selected the photograph of the defendant Levi Washington as the man who had robbed Mrs. Cwik's window and defendant Leonard Johnson, according to an F.B.I. report, as having "small, beady eyes like the person who robbed her window". Finally, on December 12, 1967, Miss Littlejohn again identified Washington as one of the robbers but did not identify Johnson.[1]

On January 29, 1968, Miss Littlejohn and Mrs. Cwik attended a lineup. At the lineup, Miss Littlejohn and Mrs. Cwik positively identified Washington as the man who robbed Mrs. Cwik's window. Miss Littlejohn tentatively identified Johnson as the man who robbed her window. She signed a written statement reading, in pertinent part, "I feel that the man wearing the numeral two [Johnson] . . . is the person who robbed my teller window on July 14, 1968 [sic]. I cannot be positive that he is the man, but he appears to be the one".[2]

On July 13, 1970, the day before the commencement of the trial of Washington and Johnson, Miss Littlejohn and other witnesses were shown photographs of the defendants at the United States Attorney's office. Miss Littlejohn was again unable to positively identify Johnson as the man who robbed her. The next day, July 14, 1970, Miss Littlejohn and other witnesses were seated outside the courtroom where the trial was to be held. Johnson and Washington were brought off of an elevator and led past the witnesses. They were bound together with handcuffs and leg irons. Miss Littlejohn at that time positively identified Leonard Johnson as the man who had robbed her window on July 14, 1967. Miss Littlejohn testified that she was told by Government officials to sit outside the courtroom so that she might see the two defendants.[3]

---

1. The F.B.I. agent attempted at trial to explain the failure to identify Johnson on December 12, 1967, as follows:
   Q. Isn't it a fact, Agent Davis, that she failed to select the photograph of the defendant Leonard Johnson at that time?
   A. Well, I can explain that, if you like.
   \* \* \* \* \*
   Q. Isn't it a fact that although the photograph of Leonard Johnson was among those shown her on that day, she did not make a selection of that photograph?
   A. She did not, but I can explain that. She had already selected the photograph of the defendant, Johnson, from the previous showing some six days earlier.
   \* \* \* \* \*
   Q. Do you mean to tell me, Agent Davis, that although the photograph of Leonard Johnson was included in this group of photographs, she was not to select that one?
   A. I told you. She had already identified the photograph of Johnson, so I was not concerned with that one at that point. It was the same photograph.
   \* \* \* \* \*

Q. Let me ask you this, Agent Davis: What was the purpose of including a photograph of Leonard Johnson in that group shown to Miss Littlejohn on December 12, 1967, if you weren't concerned with her identifying it at all, if you weren't concerned with her selecting that photograph?
   A. I wasn't concerned because it was the same one she had already selected. My purpose of showing her those pictures on that date was because I had a more recent photograph of Levi Washington I wanted to show her. I didn't even ask her about the defendant, Johnson, on that occasion.

2. Neither Jones nor Payton, the two men previously selected by Miss Littlejohn, was included in the lineup.

3. Miss Littlejohn testified as follows:
   Q. All right. And isn't it a fact that the next morning, when we were all gathered here in court, July 14, [1970].
   \* \* \* \* \*
   Q. Isn't it a fact that you were sitting outside the entrance to the Judge's chambers that morning?
   A. Yes, I was.
   BY THE COURT:
   Q. Were other witnesses there too?

The first trial of Washington and Johnson commenced on July 14, 1970, but ended in a mistrial when the Government revealed that it had not given defense counsel a form indicating that the defendant Johnson had been previously tentatively identified by a witness. A second trial on August 6, 1970, was declared a mistrial because the defendants were brought before the jury in leg irons. A third mistrial was declared on August 8, 1970, when a juror revealed that she had read a newspaper story about prosecution of the defendants for other bank robberies. A trial held on September 10 and 11, 1970, resulted in a guilty verdict. The defendants were sentenced to twenty years imprisonment.

Appellant Johnson argues that he was deprived of his due process rights when, on the day of the trial, he was "exhibited" to the Government's key witness, who had never positively identified him as the robber, while bound by leg irons and handcuffs to a man who had been positively identified as one of the robbers. Johnson contends that Miss Littlejohn's in-court identification of him was fatally tainted by this improper procedure and, as a result, it was reversible error to admit the in-court identification.

In Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the Supreme Court recognized that a confrontation between witness and suspect may be "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the witness] . . . was denied due process of law". 388 U.S. at 302, 87 S.Ct. at 1972. In assessing a due process denial in the context of a confrontation, courts must consider "the totality of the circumstances surrounding it". 388 U.S. at 302, 87 S.Ct. at 1972. See Foster v. California, 1969, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402; Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; Ward v. Wainwright, 5 Cir. 1971, 450 F.2d 409. Judged by this standard, we hold that "in the circumstances the identification procedure was so unduly prejudicial as fatally to taint [Johnson's] . . . conviction". Simmons v. United States, supra, 390 U.S. at 383, 88 S.Ct. at 970. See United States v. Sutherland, 5 Cir. 1970, 428 F.2d 1152.

Johnson was "exhibited" to Miss Littlejohn on the day of the trial, outside the courtroom, while bound to the man she and Mrs. Cwik had positively identified as one of the robbers.[4] Miss Littlejohn had been unable to positively identify Johnson as the robber at a lineup where she was seated only a few feet from him. In addition, on two previous occasions she had identified other men as closely resembling the robber. The confrontation outside the courtroom implicitly tied Johnson, literally and figuratively, with the man who had been positively identified. It suggested to Miss Littlejohn that the Government had other evidence linking Johnson to the crime

---

A. Yes, sir.

BY MR. TSCHIRN:

Q. Isn't it also a fact you were told, or it was suggested that you sit there, by government counsel so that you could see the two defendants as they walked in?

A. Yes.

Q. All right. And isn't it a fact that two defendants walked in in leg irons and handcuffs from the elevator door and walked from there to the door of the chambers, and you saw them then?

A. Yes, sir.

Q. And you were sitting down looking up at them, isn't that right?

A. Yes, I was.

Q. And wasn't it at that time that you looked at them that you nodded affirmatively?

A. Yes.

Q. Was it at that time that you positively identified Leonard Johnson?

A. That's correct.

Q. Three years to the day after it happened?

A. That's correct.

4. "This danger [incorrect identification] will be increased if . . . a single individual . . . is in some way emphasized." Simmons v. United States, supra, 390 U.S. at 383, 88 S.Ct. at 971. See also Stovall v. Denno, supra, 388 U.S. at 302, 87 S.Ct. 1967.

by the very fact that he was being brought to trial.[5] "In effect, the [Government] . . . said to the witness, *'This* is the man'." Foster v. California, supra, 394 U.S. at 443, 89 S.Ct. at 1129.

Other factors reinforce our conclusion that, in these circumstances, the confrontation was "so unnecessarily suggestive and conducive to irreparable mistaken identification". Stovall v. Denno, *supra,* 388 U.S. at 302, 87 S.Ct. at 1972, as to be a denial of due process of law. It was not imperative that the Government exhibit Johnson to Miss Littlejohn in this manner.[6] They could have arranged for a proper lineup at which Miss Littlejohn could have been allowed to view Johnson at close range or waited until Miss Littlejohn viewed Johnson in the courtroom where he would not be shackled to Washington. (See footnote 8). Any one of several acceptable alternatives were available. In addition, the confrontation took place three years after the robbery; during the robbery Miss Littlejohn saw the robber for "about a minute". Even the best memory is likely to dim over such a long period of time and be extremely susceptible to suggestive influences.[7] Finally, Miss Littlejohn was the Government's key witness, and her identification of Johnson was not corroborated by any other witness.[8] Judged by "the totality of the circumstances", the confrontation denied Johnson due process of law.[9]

We cannot hold that the admission of the in-court identification of Johnson by Miss Littlejohn was permissible. *See* Simmons v. United States, *supra*; Foster v. California, 1969, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402; Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Given the suggestive confrontation previously discussed, we must conclude that there was "a very substantial likelihood of irreparable misidentification" in Miss Littlejohn's in-United States v. Sutherland, 5 Cir. 1970, 428 F.2d 1152. The important identification was the initial one outside the courtroom. " '[I]t is a matter of common experience that, once a witness has picked out the accused [at a pre-trial confrontation] . . . he is not likely to go back on his word later on, so that in practice the issue of identity may . . . for all practical purposes be determined there and then, before the trial.' " United States v. Wade, 1967, 388 U.S. 218, 229, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149, 1159. Miss Littlejohn, before being subjected to the suggestive confrontation three years after the robbery, had repeatedly failed to positively identify Johnson and had, in fact, identified others as resembling the robber. The in-court identification must be regarded as "fruit of a suspect pretrial identification." United States v. Wade, *supra,* 388 U.S. at 235, 87 S.Ct. at 1936. The in-court identification by Miss Littlejohn was the cornerstone of the Government's case. Without that identifica-

5. "The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." Simmons v. United States, *supra,* 390 U.S. at 383, 88 S.Ct. at 971.

6. *See* Simmons v. United States, *supra,* 390 U.S. at 384–385, 88 S.Ct. 967; Stovall v. Denno, supra, 388 U.S. at 302, 87 S.Ct. 1967.

7. *See* Simmons v. United States, *supra,* 390 U.S. at 385, 88 S.Ct. 967.

8. *See* Simmons v. United States, *supra,* 390 U.S. at 385, 88 S.Ct. 967.

9. We are not persuaded that the suggestive confrontation was irrelevant because Miss

Littlejohn would have seen Johnson in the courtroom anyway a few minutes later. Although she would have seen him seated near Washington, they would not have been bound together by handcuffs and leg irons, Johnson would not have been emphasized as intimately connected with the positively identified robber. In addition, her first clear and complete view of Johnson at close range would have been from the witness stand where her identification would have been subject to immediate cross-examination. *See* Pointer v. Texas, 1965, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

tion, we could not say, on the present record, that there is sufficient evidence to support a conviction of Johnson. In short, "the identification procedure was so unduly prejudicial as fatally to taint [Johnson's] . . . conviction." Simmons v. United States, 390 U.S. at 383, 88 S.Ct. at 970. *See* United States v. Sutherland, 5 Cir. 1970, 428 F.2d 1152.

Because we have concluded that the pretrial confrontation denied Johnson due process of law under the standard of Stovall v. Denno, *supra,* we need not, and do not, decide whether the confrontation was governed by the holding in United States v. Wade, *supra.* In particular, we do not decide whether the confrontation was a "lineup" at which Johnson had the right to presence of counsel, whether counsel was, in fact, present at the confrontation, and whether *Wade* would require exclusion of the in-court identification testimony.

We need not, and do not decide, whether 18 U.S.C. § 3502 [10] could constitutionally operate to allow the admission of in-court identification testimony which would otherwise be excluded by *Wade.* We note, however, that Section 3502 does not dictate the admission of the testimony at issue here. The legislative history of that statute, as well as the interpretation of it by the Department of Justice, indicates that the statute was not an attempt to overrule or modify the Stovall v. Denno-due process standard. *See* 1968 U.S.Code Cong. & Admin. News, 2112, 2139; 114 Cong. Rec.S. 5222, S. 5546 (May 9 and 14, 1968); S.Rep.No. 1097, 90th Cong., 2d Sess. 53, 154–155 U.S.Code Cong. & Admin. News (1968); U.S.Dept. of Justice, Memo No. 584, Supp. No. 3 (June 11, 1969). In any case, in light of the legislative history we construe the statute in such a way as to avoid a serious constitutional conflict. *See* United States v. Edmons, 2 Cir. 1970, 432 F.2d 577;

United States v. King, W.D.Tex.1970, 321 F.Supp. 614.

■ Washington argues, almost verbatim from Johnson's brief, that the pretrial confrontation in the corridor violated his due process rights. We cannot agree. There is no indication in the record that the confrontation was used as a means of exhibiting Washington to the witnesses. The only relevant testimony indicates that the confrontation was for the purpose of and resulted in obtaining a positive identification of Johnson. See footnote 3. Furthermore, Washington was not, as in the case of Johnson, bound to a man who had been positively identified as one of the robbers. Washington himself had been previously positively identified as one of the robbers by two witnesses. These witnesses had never, as with Johnson, identified anyone other than Washington, tentatively or positively, as the robber. We cannot hold that, considering "the totality of the circumstances", the confrontation violated Washington's due process rights.

■ Assuming, *arguendo,* that the confrontation was improper as to Washington, we do not believe the admission of Miss Littlejohn's and Mrs. Cwik's in-court identification of Washington was reversible error. The record contains "clear and convincing evidence . . . [that] the in-court identifications had an independent origin". United States v. Wade, *supra,* 388 U.S. at 240, 242, 87 S.Ct. at 1939. Both Miss Littlejohn and Mrs. Cwik had signed statements after the January 29, 1968, lineup positively identifying Washington as the man who robbed Mrs. Cwik's window. Earlier they had tentatively identified Washington from a photo spread. These earlier identifications, when considered in light of the absence of any indication that the pretrial confrontation was in any way relevant as to Washington, convince us that the in-court identifications of

10. The testimony of a witness that he saw the accused commit or participate in the commission of the crime for which the accused is being tried shall be admissible in evidence in a criminal prosecution in

any trial court ordained and established under article III of the Constitution of the United States.

18 U.S.C. § 3502.

Washington had independent origins. In addition, the Government's case against Washington was built on a firmer foundation than the case against Johnson. There were two eye-witness identifications of Washington as well as circumstantial evidence.[11]

Nor do we believe that United States v. Wade requires exclusion of the in-court identifications of Washington. First, it appears from the record and briefs that counsel was, in fact, present during the pretrial corridor confrontation. Above all, as discussed above, there is "clear and convincing evidence" that the in-court identifications "had an independent origin", thus meeting the test of admissibility enunciated in *Wade*. *See* 388 U.S. at 239–242, 87 S.Ct. at 1926.

We have carefully examined Washington's contention that he was denied his right to a speedy trial and, as a result, was deprived of his right to have witnesses testify in his behalf and find this argument to be without merit.

Appellant Washington's conviction is affirmed. Appellant Johnson's conviction is reversed.

---

11. There is no indication in the record that Mrs. Cwik observed the pretrial confrontation in the corridor.