Herman Lamar **HALL**, Petitioner,

v.

**STATE OF FLORIDA**, Respondent.

No. 74-526-Civ-J-S.

United States District Court,
M. D. Florida,
Jacksonville Division.

June 2, 1975.

Herman Lamar Hall, pro se.

Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, Fla., for respondent.

## ORDER

CHARLES R. SCOTT, District Judge.

Petitioner, an inmate at Florida State Prison, Starke, Florida, seeks federal

habeas corpus relief pursuant to 28 U.S. C. § 2254.

In 1969, petitioner, along with two others, was tried in the Circuit Court of Duval County, Florida, for the slaying of Sidney Parnell. Parnell's death occurred during the 1968 robbery of the Ribault Grocery Store in Duval County, Florida. After trial by jury, petitioner was convicted of first degree murder on the theory of felony murder. He was sentenced to life imprisonment. His conviction was affirmed by the District Court of Appeal of Florida, First District, on June 10, 1971. Hall v. State, 249 So.2d 59 (Fla.App.1971). Petitioner now alleges six defects in the trial court proceedings which he claims denied him due process of law. After review of the entire record of the state court proceedings, this Court finds petitioner's allegations to be without merit. In rejecting the petition without an evidentiary hearing, this Court is not unmindful of its responsibilities under Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L.Ed.2d 770 (1963). The nature of the allegations and the completeness of the record, however, obviate the necessity of a hearing in this case. Jennings v. Wainwright, 486 F.2d 1041 (5th Cir. 1973). Petitioner's individual allegations and this Court's reasons for rejecting them are set forth below.

Three of petitioner's allegations arise from a single occasion. This occasion was a coroner's inquest held to inquire into the death of Sidney Parnell. The events preceding the inquest are simply stated. The robbery of the store and Parnell's death occurred on September 25, 1968. There were several eye-witnesses. Within a few days, petitioner was arrested in Tallahassee, Florida. A coroner's inquest was held October 7, 1968. Petitioner appeared at the inquest with his co-defendants. He was handcuffed and was not represented by counsel. At the outset of the proceedings petitioner was advised as follows:

THE CORONER: Herman Hall, Albert Eugene Paschal, Mitchell Lee Simpson, all three of you are charged with murder. Before me, a Justice of the Peace * * * (affidavit read.)

THE CORONER: Now, we are going to hold an inquest and also you have a right to have a preliminary hearing if you so desire; you have a right to an attorney, you have a right to refuse to testify. In the event you do testify anything you may say can be and possibly will be used against you at a preceding hearing. Is there any questions you would like to ask about your rights? Any one of you or all of you would like to have a preliminary hearing along with this inquest?

How about you, Herman Hall?

HERMAN HALL: I have nothing to say.

THE CORONER: Albert Eugene Paschal?

ALBERT EUGENE PASCHAL: No.

THE CORONER: How about you, Mitchell Lee Simpson?

MITCHELL LEE SIMPSON: Nothing to say. The same way, I guess, I have nothing to say either.

THE CORONER: In other words, you don't want to have a preliminary hearing? At a preliminary hearing you have a right to testify and you have a right to cross examine any of the witnesses that do testify, but you do not have to have a preliminary hearing at this time, we can just hold an inquest. I will ask Mr. Booth to further advise you along these lines.

MR. BOOTH: All of you know and understand you have a right to have an attorney to represent you?

THE DEFENDANT: Yes.

MR. BOOTH: In other words, to proceed with the preliminary hearing it would be better to have a lawyer to represent you and advise you, in other words, we will proceed with the inquest only unless you are willing to waive the right to hold the preliminary hearing, and as long as you do not

have an attorney I think that would be the proper thing to do, and since they have said they had nothing to say, Your Honor, I think it would be best to proceed with the inquest only.

THE CORONER: I feel the same way, Mr. Booth, so we will just have the preliminary hearing at another time and we will just have the inquest now.

The inquest then proceeded. The prosecuting attorney presented evidence detailing Parnell's death, including eyewitness testimony. At the close of the inquest, the jury returned a verdict of guilty as charged. Thereafter, petitioner was retained in custody. He was indicted on October 18, 1968, and tried on November 3, 1969.

Petitioner now alleges that the coroner's inquest was illegally held and that as a consequence of it he was: (1) denied his right to effective counsel; (2) subjected to double jeopardy; and (3) exposed to the state's witnesses under circumstances so suggestive as to taint the witnesses' later in-court identification.

■ As to the legality of the inquest, the question of whether it was proper for the state to hold an inquest when there were witnesses to the death; and the question of whether this particular inquest was properly conducted, are not before this Court. In the absence of any prejudice to petitioner's federally protected rights, the legality *vel non* of the inquest is a matter of state law only. *Cf.* Cappetta v. Wainwright, 433 F.2d 1027 (5th Cir. 1970). In this case petitioner was not prejudiced by the inquest itself. He was afforded all the pre-indictment safeguards he was entitled to. He therefore cannot complain. Pugh v. Gerstein, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

■■ A coroner's inquest is not an adversary proceeding. Rather, it is an inquiry into the method of death (*i. e.,* by felony, mischance or accident) and into the instrumentality of death. On Oc-

tober 7, 1968, no adversary proceedings were yet pending against petitioner. He was, therefore, not entitled to the appointment of an attorney for the inquest. Pugh v. Gerstein, *supra*; Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Furthermore, petitioner was not twice put in jeopardy. The form of the coroner's jury verdict was guilty as charged. This did not, however, constitute a conviction. The only consequence of the verdict was that petitioner was bound over for indictment. He was not in jeopardy until his trial in November 1969. At this trial, the coroner's jury verdict was of no consequence. It was never mentioned. Furthermore, if it could be said that the inquest constituted jeopardy, petitioner was found guilty. He cannot, then, claim prejudice by the November trial. His double jeopardy claim is without merit.

■ Petitioner's remaining inquest-related claim is more substantive. The inquest was a pre-trial confrontation between petitioner and the state's witnesses. As such it must be scrutinized for suggestiveness spawning possible in-court misidentification. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Petitioner's claim relevant to this confrontation is that he was exposed to the state's witnesses under suggestive circumstances. These circumstances were petitioner's appearing at the inquest handcuffed and in the posture of a defendant. Petitioner alleges this exposure suggested his guilt to the witnesses and tainted their minds against him. This taint in turn produced a likelihood of misidentification at trial. The Supreme Court of Florida rejected this claim in Paschal v. State, 251 So.2d 257 (Fla.1971). A review of the record fully credits the Florida Court's finding.

The test applicable to this claim is comparable to that applied in photographic display and line-up cases. The test is two-pronged. It must be determined: (1) whether the pre-trial con-

frontation was so impermissively suggestive as to, (2) produce a substantial likelihood of misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States v. Kimbrough, 481 F.2d 421 (5th Cir. 1973). The primary concern, however, is with the likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In this case, assuming for the sake of argument that the confrontation was suggestive, the question then narrows to whether there was a substantial likelihood of misidentification. The relevant factors in making this decision are enunciated in Neil v. Biggers, *supra*, 409 U.S. at page 199, 93 S.Ct. at page 383:

> We turn, then, to the central question, whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Applying these factors, this Court sees small likelihood that petitioner was misidentified. The witnesses had ample opportunity to view the culprits at the time of the crime. The grocery store was well lighted. The robbers entered the store twice. They were unmasked. The victims conversed with the robbers; were able to describe their clothing and appearance; and were able to identify the robbers from photographs. The inquest took place within two weeks of the incident. All the witnesses made positive identifications of petitioner at both the inquest and the trial. Under these circumstances, this Court finds it unlikely that the inquest was the source of misidentification. Rather, the robbery encounter itself provided the most reliable source of the in-court identification. Ward v. Wainwright, 450 F.2d 409 (5th Cir. 1971).

Petitioner's next claim is that he was denied the effective assistance of counsel at trial. In support, petitioner alleges that his public defender was too burdened with other cases to adequately prepare petitioner's case. Furthermore, petitioner alleges that his counsel advised him to plead guilty, which petitioner did not do. Petitioner's request to the trial court for different counsel was denied.

■ The standard by which this claim must be judged is clear. In MacKenna v. Ellis, 280 F.2d 592 (5th Cir. 1960) at page 599, it was stated that:

> We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.

A review of the entire transcript in this case, with particular attention to the performance of petitioner's counsel, convinces this Court that counsel did not fail to render reasonably effective assistance. First, the evidence tending to establish petitioner's participation in the crime was substantial. It cannot now be said that petitioner was ill-advised to plead or that the giving of this advice showed petitioner's counsel was unwilling to represent petitioner at trial. Second, counsel's performance shows that he was familiar with the facts of the case and the laws and defenses applicable. Petitioner was adequately represented.

Petitioner's next allegation is that he was denied his right to trial by an impartial jury in violation of the Sixth Amendment. In support of this claim, petitioner makes two specific claims. First, he alleges that one prospective juror stated that he was aware petitioner was an ex-convict. Second, he al-

leges that another prospective juror stated that he was prejudiced against petitioner because of recent racial tensions in the community. Petitioner alleges that both statements were made in the presence of the entire jury venire and so prejudiced their minds against him that he could not receive a fair trial. Examination of the transcript of the jury voir dire convinces this Court that petitioner's allegations are unfounded.

■ Petitioner exaggerates his first claim. The juror referred to did not plainly identify any of the defendants as ex-convicts. He merely stated that he recognized one of the defendants from his work at Raiford. Assuming, however, that the venire did understand the juror to mean that one of the defendants had been a prisoner at Raiford, the juror did not make it clear which of the three defendants he was talking about. The following excerpt from the transcript relates the incident:

A JUROR: Your Honor, I believe I recognize one of the defendants.

THE COURT: Beg pardon?

A JUROR: I believe I recognize one of the defendants.

THE COURT: By recognizing him that doesn't mean anything.

A JUROR: I don't think so.

THE COURT: You don't know him through business or any close association; you would have no feeling one way or another towards him?

A JUROR: No special feelings.

THE COURT: Is your recognition based on some casual?

A JUROR: I was a guard at Raiford State Prison.

MR. DURRANCE: Your Honor, in view of the statement there that he was "a guard at Raiford State Prison" and that he recognized one of the defendants, I submit that the Court ought to excuse him from jury duty.

THE COURT: All right. You are excused.

(Juror excused)

MR. NICHOLS: Your Honor, on behalf of my defendant, I would like to know which one he recognizes. I just thought maybe the juror might tell us which one he recognized and that it wasn't my defendant.

THE COURT: He may have recognized them because he came to visit someone in jail. I don't know.

MR. DURRANCE: Your Honor, I couldn't hear very well and I don't know if the Court ruled on that motion or not. I want to join in the motion on behalf of my client that a determination be made as to which defendant he recognized.

THE COURT: Well, I see no point in putting that before the rest of the jurors at this point before any—I don't think the recognition goes beyond having seen the person whether he be a visitor or a frequent visitor.

MR. NICHOLS: Well, on behalf of Mitchell Lee Simpson I would like to ask the entire panel be disqualified as a result of this.

MR. DURRANCE: Defendant Hall would join in that motion also.

MR. MARSHALL: Defendant Paschal joins in that motion, also, Your Honor.

THE COURT: Denied.

MR. DURRANCE: I ha e an alternative motion on behalf of defendant Hall and I would ask the Court to declare a mistrial here.

THE COURT: Denied.

Petitioner's prior criminal record would not be admissible against him at trial unless he took the witness stand. In this case he did not testify. His record, therefore, should not have been considered by the jury. It cannot be said, however, that it was considered here. Furthermore, even if some jurors did realize the meaning of the statement, it does not appear to this Court that un-

der the circumstances the knowledge denied the trial of fundamental fairness. The juror was immediately excused from service. The trial judge thereafter sought and received repeated assurances from the jurors that they would judge the defendants impartially and without bias. These assurances satisfied the trial court and now this Court that petitioner was not unduly prejudiced by the remark. *See* Murphy v. State, 363 F.Supp. 1224 (S.D.Fla.1973), affirmed 495 F.2d 553 (5th Cir. 1974). Turning now to petitioner's second claim, he again exaggerates. The following recounts the event:

MR. MARSHALL: No, as you all can see, I am a Negro and the defendant Albert Paschal is also a Negro. Do any of you have any bias or prejudiced feelings towards me or towards the defendant Albert Paschal simply because we are members of the Negro race?

May I have your answer to that?

A JUROR: I am thinking. Yes.

MR. MARSHALL: You are prejudiced?

A JUROR: Yes.

THE COURT: You're saying you are prejudiced?

A JUROR: Yes, due to this little episode just recently.

THE COURT: All right, you are excused.

MR. HARRISON: Was that an excuse for cause or a preemptory challenge?

THE COURT: For cause.

MR. HARRISON: Your Honor, I believe the answer would preclude a challenge for cause. I believe his answer was "because of this little episode with counsel" and counsel certainly can't stir up an episode and have a prospective juror excused for cause.

MR. MARSHALL: I don't think that his answer says that. I respectfully request a mistrial.

THE COURT: Denied. He will be excused for cause. Call another juror.

It is clear that the juror did not express prejudice against petitioner personally. The juror's answer was in response to a question asked by another attorney regarding another defendant as a member of the Negro race. The juror was immediately excused. Thereafter the remaining jurors gave repeated assurances of impartiality [1]. *See* Murphy v. State, *supra*.

▪ Prior to the juror's statement, petitioner, through counsel, had moved for a continuance of the trial due to recent racial disturbances in the community and newspaper coverage of the disturbances. The motion was denied. Perhaps petitioner interprets the juror's statement as showing that the community from which the venire came had

[1] . . . Now, just a minute ago, one of the jurors was excused for cause. Let me ask each of you as a panel whether or not because of that question being asked, those of you who sit here now, have become biased or prejudiced towards me as an attorney representing Albert Paschal, a Negro defendant.

Have any of you formed any opinions now simply because the question asked previously?

JURORS: (No audible response)
MR. MARSHALL: Mrs. Touchton?
MRS. TOUCHTON: No.
MR. MARSHALL: Mrs. Alcorn?
A JUROR: No.
MR. MARSHALL: And, I also mean that for the two alternate jurors?

ALTERNATE JURORS: No.
MR. MARSHALL: No, let me ask that question once again because I wasn't sure of the answer I got.

As you all can see, I am Negro and the defendant Albert Paschal is Negro. Are any of you biased or prejudiced towards myself or the defendant simply because we are both Negroes?

Can you still render a fair and impartial verdict despite the fact that I am Negro and the defendant a member of the Negro race also?

THE JURORS: (Nod heads affirmatively) (No audible response)

been influenced by recent racial problems. The state court judge, however, upon considering the motion found the recent racial disturbance and newspaper coverage to be a small and isolated event and not likely to have prejudiced the jury venire as a whole.[2] In light of the judge's finding and the assurance of all the jurors who sat at the trial, this Court finds that the statement of the juror as to racial prejudice was not sufficient to taint the minds of the jurors against him. Petitioner was not, therefore, denied his right to trial by an impartial jury.

 Petitioner's fifth claim is that the state deliberately procured and used perjured testimony against him. Specifically, petitioner points to the testimony of police officer Sanders at pages 329 and 330 of the trial transcript. Petitioner alleges that this testimony was perjured and went to establish a predicate for the admission of evidence that was later used against him. Upon reviewing the transcript, this Court finds no basis for a perjury charge or a charge of the deliberate use of perjury to obtain a conviction.

According to the transcript, officer Sanders was one of the officers who arrested petitioner. He testified that at the time of arrest, a pistol was taken from petitioner's possession. The pistol was later tied in as the one taken from the Ribault Grocery Store. When questioned as to why no mention of the gun was made on the receipt for personal property items taken from the defendant at the time of his arrest, officer Sanders answered, in the absence of the jury, that it was not customary to make receipts for personal items. When asked if he had, nonetheless, made such a receipt in this case and whether he had given it to the petitioner, he gave the evasive answer that he had not given the receipt to the petitioner. When shown a receipt, however, the witness acknowledged his signature and justified the absence of any notation concerning the gun by saying he had chosen to deal with that item in a different manner. This testimony forms the basis for petitioner's perjury claim. A review of officer Sanders' testimony as a whole, however, refutes any claim of perjury.

At page 348 of the transcript, officer Sanders testified, this time in the presence of the jury, that it was customary to make a receipt list for personal property items taken from an arrestee and to give the receipt to the arrestee. He further testified that he had made such a receipt in this case, that he had taken a gun from petitioner's possession, but that he had not listed it because it was to be listed on another receipt, which he did not give petitioner. While this later testimony is obviously inconsistent with the former, it does not lay a basis for a charge of perjury. The alleged false statements could not have possibly contributed to petitioner's conviction in light of the fact it was not heard by the jury. Furthermore, there was additional testimony upon which to base admission of the gun into evidence. Petitioner cannot, therefore, substantiate his perjury claim. Conyers v. Wainwright, 309 F.Supp. 1101 (S.D.Fla.1970); Jackson v. United States, 258 F.Supp. 175 (N.D.Texas 1966).

2. MR. DURRANCE: The defendant, Herman Hall, instructed me to ask for a continuation in this case on the ground in view of the recent racial disturbances and specifically in view of the fact that the city edition of the Jacksonville Journal this day, November 3rd, 1969, has carried an editorial story of these racial disturbances and that the atmosphere and the general knowledge of all the jurors is such that might do prejudicial harm to them against these defendants, these colored defendants.

MR. NICHOLS: Same motion for Simpson.

MR. MARSHALL: I would like to join in that motion on behalf of defendant Paschal, also.

THE COURT: All the jurors on their voir dire disclaimed any prejudice against any of the defendants and the publicity of the incident mentioned which occurred in a limited area and a comparatively small sized area and the motion is denied.

Mr. Marshall, you may proceed.

 Petitioner's last allegation is that the trial court denied him his right to a trial by an impartial jury when it required each of the co-defendants' counsel to exercise their peremptory challenges immediately after their voir dire examination. This claim is without factual basis. The trial transcript speaks for itself.

MR. MARSHALL: As a point of clarification, Your Honor, the State in exercising their peremptory challenges, as I recall it, did so, excluding members of the panel who were not excluded on the first exercise of the peremptory challenge by the State.

The Judge's ruling now requires both the State and the defendant to exercise their peremptory challenges as soon as the questioning is over.

THE COURT: I don't believe what you say is correct. As I recall it, he exercised those challenges at the same time, and then, one or two, I think went off either on a challenge for cause or a peremptory challenge.

MR. HARRISON: It was peremptorily, Your Honor.

THE COURT: And that, I think, was the end of it and he finished and tendered the whole jury panel. You tell me if I am wrong but I believe that is the way it happened.

MR. MARSHALL: For the record, may we just cite the case of Wolfe versus State, page 776—

THE COURT: That is true, but what I am saying is I want you all to expedite this matter and take your challenges when you know you want to take them instead of dragging them out.

MR. MARSHALL: As to expediency, Your Honor, it is difficult sometimes to tell right then whether or not you want to challenge a juror but after another attorney examines them for a few minutes, you might decide to take off another one and then still later another one.

THE COURT: That is entirely probable. As I said a while ago, any additional question he gets from some answers that don't suit him, he can exercise a peremptory challenge then but to take them off one at a time for no good reason and string this thing out is not necessary.

MR. MARSHALL: I want to get it over with as expeditiously as possible.

THE COURT: I am telling you what the ground rules are and, if based on any additional questions being asked by either himself or by you or by the State or by Mr. Nichols or Mr. Durrance, you are entitled to exercise your challenges and you are not being foreposed at this point at all.

All of petitioner's allegations having been considered and rejected, it is, therefore,

Ordered:

1. Petition for writ of habeas corpus is hereby denied.

2. This case is hereby dismissed.

3. Certificate of probable cause, if requested, is hereby denied.