330 So.2d 895 (1976)
STATE of Louisiana
v.
Cedric HARGROVE.
No. 57176.
Supreme Court of Louisiana.
March 29, 1976.
Rehearing Denied May 14, 1976.
*896 James D. Sparks, Jr., Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant Hargrove was charged by bill of indictment with aggravated rape in violation of La.R.S. 14:42. After trial by jury he was convicted and sentenced to death. This appeal is founded on nine assignments of error.
The rape victim was employed as a cashier at a convenience store on July 27, 1974. Shortly after 11:30 P.M., a man entered the store, brandished a pistol and demanded money from the cash register. After receiving the money he asked the victim if she had a car at the store and when she replied affirmatively he ordered her to accompany him outside. As they were leaving, a young woman, Pauline Parker, entered the store. The robber ordered her into the store, and he and the cashier departed in the victim's vehicle. Another witness, Wendell Kennedy, drove up at about this time and saw the two get into the car. The victim testified that her assailant forced her to drive to a sand and *897 gravel pit and to perform sexual intercourse with him. Afterward he had her drive back into the city and let him out of the vehicle. Then the victim went immediately to the police station and reported the crime. By this time the two witnesses had already informed the police of what they had observed at the convenience store.
ASSIGNMENT OF ERROR NO. 1
Defense counsel moved during trial for an examination and hearing on defendant's mental capacity to proceed. La.C.Cr.P. art. 641 et seq. The court denied the motion after hearing the testimony of defense counsel and a judicial probation officer called by the State. The attorney testified that defendant had been of no assistance to him in the case because he persisted in clinging to an irrational and incredible story exculpating himself from the crime. The probation officer, who had known the defendant for about eight years, in essence indicated that defendant, although of below average intelligence, was capable of understanding the proceedings and communicating with others.
After conviction but prior to sentence the defendant again moved for a mental examination, and the State concurred. Two psychiatrists who examined the defendant testified that, although he was of dull intelligence, he possessed the mental capacity to proceed and that there was no reason to believe he had ever lacked the ability to understand the proceedings or to assist in his defense.
Our test for mental incapacity to proceed is whether the defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. La.C.Cr.P. art. 641. Mere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity. State v. Edwards, 257 La. 707, 243 So.2d 806 (1971). Under La.C.Cr.P. art. 643 as written at the time of defendant's trial, the trial judge within his discretion could order a mental examination of the defendant if he had reasonable ground to doubt the defendant's mental capacity to proceed. Based upon the evidence in the record we are unable to say that the trial judge abused his discretion in finding no reasonable ground to doubt this defendant possessed the mental capacity for proceeding with trial or in refusing to order such an examination during trial.
This assignment of error has no merit.
ASSIGNMENTS OF ERROR NOS. 2, 3, 4, 6, 7 AND 8
The main thrust of these assignments is directed at two pre-trial line-ups, one being a photographic line-up, and at out-of-court confrontations between the accused and the prosecution's eyewitnesses. Defense counsel objected to the in-court identification of defendant and to the introduction of exhibits on the ground that all of this evidence was derived from unconstitutional out-of-court identification procedures.
After talking with the victim and witnesses the investigating police officers formed a suspicion that defendant Hargrove had committed the offense. They obtained his picture from the sheriff's photograph file and displayed it to the victim and two witnesses along with the pictures of four other persons. Each viewer of the photographs identified the defendant as the man who robbed the convenience store. Defendant was arrested and a search under warrant was made of his home during which certain tangible evidence was seized. He was placed in a line-up with four other persons and identified as the robber by the two witnesses. The victim was unable to identify anyone at the line-up. She testified this was due to exhaustion and emotional disturbance caused by her experience and lack of sleep for twenty-four hours.
First, defendant argues that he was entitled to the presence of an attorney at the line-up. However, the presence of defense counsel at a line-up is required *898 only after the initiation of formal prosecutorial proceedings. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Lawrence, 294 So.2d 476 (La.1974). Because the line-up in the instant case was conducted within two hours of defendant's arrest and before the filing of a formal charge this argument is without merit.
Next, defendant argues that the line-up and photographic display were unduly suggestive and that the in-court identifications and evidence obtained from the search of defendant's house were consequently tainted. We have inspected the photographs used in the display and a group picture of the participants in the line-up. From these exhibits and the testimony of the witnesses describing the lineup procedures we find they were conducted fairly and without suggesting to the viewers that a particular participant was under suspicion. All of the participants were of the same race and had similar physical characteristics. It is true the defendant appeared in coveralls in contrast with the others who wore a motley assortment of clothing. However, the coveralls resembled the jumpsuits worn by many as casual attire today and did not bear any markings visible to the viewers which would indicate defendant was dressed in prison apparel.
Thus, we reject defendant's argument that the identification procedures were unfair because, looking at the totality of the circumstances, the photographic and line-up identification procedures were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968); State v. Jackson, 259 La. 957, 254 So.2d 259 (1971).
Nevertheless, defense counsel contends that the in-court identifications of defendant by the victim and two witnesses were improperly admitted because they were allowed to view the accused in the hallway of the courthouse before giving their testimony at trial. The record reflects that these witnesses were sworn at the beginning of the trial and instructed to remain outside the courtroom until called. The physical characteristics of the court building were such that the most convenient place for the witnesses to sit while waiting was in the only hallway leading to the courtroom. The witnesses observed the defendant seated at the counsel table when they were originally placed under oath. They also saw him being taken to and from the courtroom in handcuffs and shackles on several occasions. Although defense counsel was aware of this situation, he did not object until the afternoon of the second day of the trial when he unsuccessfully moved to suppress the identification testimony.
An out-of-court confrontation between witness and suspect raises questions similar to those presented by an impermissibly suggestive line-up or photographic identification. In adapting federal jurisprudence concerning improper identification procedures to a confrontation situation, the United States Fifth Circuit Court of Appeal in United States v. Johnson, 461 F.2d 1165 (5th Cir. 1972), stated:
"In Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the Supreme Court recognized that a confrontation between witness and suspect may be `so unnecessarily suggestive and conducive to irreparable mistaken identification that [the witness] . . . was denied due process of law'. 388 U. S. at 302, 87 S.Ct. at 1972. In assessing a due process denial in the context of a confrontation, courts must consider `the totality of the circumstances surrounding it'. 388 U.S. at 302, 87 S.Ct. at 1972. See Foster v. California, 1969, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402; Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; Ward v. Wainwright, 5 Cir. 1971, 450 F.2d 409." 461 F.2d at 1168. *899 In a similar vein we have previously indicated that, even if impermissible suggestions were made to a witness as to the identity of the suspect, due process does not mandate a reversal of the conviction if the record reveals that there existed an independent and untainted basis for the witness' in-court identification. State v. Moore, 300 So.2d 492 (La.1974).
We find, from a totality of the circumstances surrounding the confrontations, that, although they were undoubtedly suggestive, there existed an independent and untainted basis for each witness' incourt identification.
All three witnesses positively identified the defendant during the pre-trial photographic display. Two of the witnesses positively identified him at the pre-trial line-up, and the victim's failure to identify any one at that time in her physical and emotional condition was certainly understandable. The victim frankly admitted that seeing the defendant in the courthouse hallway refreshed her recollection, but she also testified that she felt she could have identified him without the confrontation. During the time she was forced to spend with the defendant at the store, in her vehicle, and during the act of sexual intercourse, there was ample opportunity for her to become familiar with his characteristics. Although she testified that she did not look at his face many times, considering his proximity to her for an extended period, we conclude she was able to observe him sufficiently to enable her to identify him at the trial, which was held a little over four months after the offense occurred.
The other two witnesses' in-court identifications were based on observations of the defendant at the convenience store rather than upon what they saw at the courthouse. Both of these witnesses had seen defendant before the crime and were somewhat familiar with his appearance. One of them had recognized the defendant on the night of the crime as a person with whom she had attended school. These witnesses never wavered in their identification of the defendant and maintained that the confrontation had not refreshed their recollection.
Furthermore, we are convinced from the evidence that the confrontations between the witnesses and the accused at the courthouse were not contrived by the prosecution for purposes of aiding their identification testimony. The conduct of the prosecution in each case must be considered as part of "the totality of the circumstances surrounding [the confrontation]." See Stovall v. Denno, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); United States v. Johnson, supra. The fact that the confrontations here were not arranged or planned by the State weighs in favor of our conclusion that the in-court identifications were properly admissible.
The last issue raised by these assignments is whether defendant's confrontations with the witnesses at the courthouse requires reversal of his conviction because of the "absence" of counsel on these occasions. We note that defendant had an attorney who, being aware of his scheduled trips to and from the courtroom, could have been at his side. However, we pretermit the question of whether defendant was without counsel during the confrontations because we have concluded that the holding of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) that the defendant has a right to counsel at post-indictment line-ups, does not apply to an inadvertent confrontation between a witness and an accused. See United States v. Seader, 440 F.2d 488 (5th Cir. 1971).
These assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 5
The defendant complains that the trial court erred in admitting the testimony of an assistant chief of police regarding statements made by the victim at the line-up. However, we find no reference to such statements in his testimony. In fact, he *900 testified he was not present during her observance of the line-up.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 9
In this assignment defendant contends that, as sought to be inflicted here, the death penalty is cruel and unusual punishment. United States Constitution, Eighth and Fourteenth Amendments. We have consistently held that the death penalty for aggravated rape does not constitute cruel and unusual punishment even where no life was placed in jeopardy or no violent beating occurred. State v. Myers, 261 La. 100, 259 So.2d 27 (1972); State v. Selman, 300 So.2d 467 (La.1974).
This assignment of error lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.
SANDERS, C. J., concurs in the decree.
DIXON, J., dissents from the sentence, believing the death penalty in Louisiana is unconstitutional under decisions of the U. S. Supreme Court, but otherwise concurs.